442 A.2d 1133
**COMMONWEALTH of Pennsylvania**
v.
**William MIRANDA, Appellant.**
Superior Court of Pennsylvania.
Argued June 13, 1980.
Filed March 12, 1982.

Petition for Allowance of Appeal Denied August 10, 1982.

442

444

Lawrence J. Hracho, Reading, for appellant.

Charles M. Gruthrie, Jr., Assistant District Attorney, Reading, for Commonwealth, appellee.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, WICKERSHAM and BROSKY, JJ.

CERCONE, President Judge:

Appellant, William Miranda, was convicted of one count of attempted murder,[1] two counts of aggravated assault[2], and two counts of recklessly endangering another person.[3] Post-trial motions were filed and dismissed. Appellant was then sentenced to serve concurrent terms of imprisonment of five to ten years, two to five years and one to three years, respectively. No petition to reconsider the sentence was filed and no direct appeal was perfected. Appellant's trial counsel subsequently petitioned the Superior Court for permission to file an appeal *nunc pro tunc*; we denied this petition. Appellant then filed a petition under the Post-

1. Crimes Code, 18 Pa.C.S. § 901(a) (1973).

2. Crimes Code, 18 Pa.C.S. § 2702(a)(4) (1973).

3. Crimes Code, 18 Pa.C.S. § 2705 (1973).

Conviction Hearing Act[4] (hereinafter PCHA) alleging *inter alia* the ineffectiveness of trial counsel for failing to take a direct appeal. The PCHA court reviewed the ineffectiveness claim and granted appellant the right to file an appeal *nunc pro tunc.* The court, however, did not address the other issues alleged in the PCHA petition. The *nunc pro tunc* appeal to this Court was filed, and we ordered the case listed for reargument before the *en banc* court and requested that the parties give primary emphasis in their briefs to the question concerning the scope of review permitted a post conviction hearing court when it determines that the PCHA petitioner has been denied his appellate rights. The central point of contention to be examined is whether the PCHA court is precluded from reaching the merits of other issues raised in the PCHA petition once that court determines that petitioner has been deprived of his direct appeal rights and grants an appeal *nunc pro tunc.* In accordance with our directive, both appellant and appellee have fully briefed this issue. In this case appellant presents three other claims in addition to the deprivation of appellate rights claim, (1) whether the pre-trial hearing court erred in dismissing appellant's Rule 1100 application, (2) whether the sentences imposed were illegal insofar as the sentences merged, and (3) whether the sentencing court complied with the provisions of *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977). All issues presently raised by appellant were properly preserved by specific post-trial motions below.

I. The *"Nunc Pro Tunc* Problem."

The problem, then, is to decide what substantive and procedural limitations a PCHA court has when it decides that the PCHA petitioner was denied his appellate rights and thus grants the *nunc pro tunc* appeal.

A. Discussion of the Problem.

■ In general, the Post Conviction Hearing Act 19 P.S. § 1180–1 *et seq.* provides the criminal defendant with the

---

4. Act of January 25, 1966, P.L. 1580 (1965), § 1 et seq., 19 P.S. § 1180–1 et seq., *repealed* § 2(a) [1397] of Act 1978, April 28, P.L. 202, No. 53, to take effect June 27, 1980, *reinstated* Act of June 26, 1980, No. 41 § 1, to June 27, 1982.

opportunity for collateral relief. Section 2 of the Act clearly sets forth its intended purpose:

This act establishes a post-conviction procedure for providing relief from convictions obtained and sentences imposed without due process of law. The procedure hereby established shall encompass all common law and statutory procedures for the same purpose that exist when this statute takes effect, including habeas corpus and coram nobis. However, nothing in this act limits the availability of remedies in the trial court or on direct appeal.

Where the petitioner's claims are patently frivolous and are without a trace of support either in the record or from other evidence submitted by petitioner, the PCHA court may dismiss the petition without a hearing. Moreover, even where petitioner alleges facts that, if proven, would entitle him to relief, the petition may still be dismissed if the issue(s) presented could have been raised previously, and petitioner does not allege extraordinary circumstances justifying his failure to do so. *Commonwealth v. Porter*, 256 Pa.Superior Ct. 163, 166, 389 A.2d 651, 653 (1978). Instantly, we are concerned with the situation where the PCHA petitioner alleges in his petition not only the deprivation of his appellate rights but also several other claims specifically permitted by Section 1180-3 of the Act. Usually, the deprivation of rights claim is premised upon counsel's ineffectiveness either for having failed to take an appeal, despite petitioner's request to do so, or for having failed to pursue on appeal an allegedly meritorious claim. *See, e.g., Commonwealth v. James*, 484 Pa. 180, 398 A.2d 1003 (1979); *Commonwealth v. Westbrook*, 484 Pa. 534, 400 A.2d 160 (1979); *Commonwealth v. Dixon*, 475 Pa. 365, 380 A.2d 765 (1977); *Commonwealth v. Fauntroy*, 475 Pa. 287, 380 A.2d 357 (1977). In addition to premising the claim upon ineffectiveness, the PCHA petitioner can assert denial of his appellate rights as they have been defined by *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1967).[5] *See,*

---

**5.** In *Douglas* the United States Supreme Court held that the equal protection clause of the fourteenth amendment mandates that an

*e.g., Commonwealth v. Morris,* 486 Pa. 391, 406 A.2d 337 (1979) (where petitioner has not been fully apprised of his appellate rights, the proper remedy is the *nunc pro tunc* filing of post-trial motions).[6]

The presence of this deprivation of appellate rights claim in the PCHA petition has puzzled the PCHA courts insofar as the proper procedure to be employed in disposing of the petition. The questions facing the PCHA court appear to be (1) whether the court is to review the claim asserting denial of appellate rights, and if meritorious, grant petitioner the right to appeal *nunc pro tunc*, leaving all other claims asserted in the petition open, or (2) whether the court is to do more than merely find a deprivation of appellate rights; in other words, what is PCHA court to do with respect to other issues raised. There is no consistent pattern followed by PCHA courts in this matter. In some instances, the court will review the deprivation of appellate rights claim, grant the *nunc pro tunc* appeal and then, as if conducting an independent hearing, it will go on to review and deny the other claims asserted in the PCHA petition. Under these circumstances two appeals result: the petitioner files a *nunc pro tunc* appeal on the deprivation of appeal rights claim and also an appeal from the order of the PCHA court's denial of other relief requested. Other times, the PCHA court, reading the case of *Commonwealth v. Webster,* 466 Pa. 314, 317–18, 353 A.2d 372, 373 (1976), will first review

indigent have the right to court-appointed counsel to prepare a first appeal if that appeal is available to him of right.

6. Thus, it is evident that denial of appellate rights may result for varied reasons, including, *inter alia*, the ineffectiveness of appellate counsel, as was the case in *Commonwealth v. Webster,* 466 Pa. 314, 317–18, 353 A.2d 372, 373 (1976), or a procedural error committed by the lower court, such as the failure of the court to inform defendant of his appeal rights. Because most of the cases developing the law in the area of *nunc pro tunc* appeals arise within the context of ineffective appellate counsel claims, our opinion appears to deal with this subject almost exclusively; however, the impact and scope of this opinion is intended to be broader and more general, explaining the proper procedure to be utilized by a PCHA court faced with a claim asserting denial of appellate rights, for whatever reason, together with other claims properly raised.

the deprivation of appellate rights claim, decide the issue in petitioner's favor and grant the *nunc pro tunc* appeal without considering the other issues raised in the petition. Here, although a single appeal results, that is the *nunc pro tunc* appeal, we are usually presented with an incomplete record on the additional issues raised. Finally, the PCHA court may review and deny all claims asserted in the PCHA petition, whereupon petitioner would file a single appeal from the order denying relief. Because of the various procedures followed in the courts below, we experience too many instances where unnecessary duplication of appeals find their way to the appellate court, or where too many remands are ordered because of incomplete records. Thus, we direct a procedural course to be followed henceforth, in consonance with our Supreme Court cases.

B. *The Procedural Approach to the Problem.*

At present, the cases of *Commonwealth v. Webster,* 466 Pa. 314, 317–18, 353 A.2d 372, 373 (1976), and *Commonwealth v. Valezquez,* 244 Pa.Superior Ct. 327, 368 A.2d 745 (1976), appear to offer divergent views on the subject under consideration. That is, in *Webster,*[7] our Pennsylvania Supreme Court held that when a PCHA court determines that a petitioner has been denied his appeal rights, the court should refrain from deciding all other claims alleged in the petition for post-conviction relief and should grant the peti-

7. The appellant in *Webster* had been sentenced *prior to* the filing of post-trial motions. Although post-trial motions were subsequently filed, the lower court en banc entered an order striking the motions after finding that "these motions had not been properly prosecuted and were therefore abandoned." *Commonwealth v. Webster,* 466 at 318, 353 A.2d at 374. No appeal was taken from this lower court order. Seemingly, these circumstances prompted the Supreme Court to state that the preferable procedure would have been to allow appellant the opportunity to file post-trial motions with the lower court. In this respect, the Supreme Court remains consistent with later cases in which no post-trial motions were filed. *See e.g., Commonwealth v. Morris,* 486 Pa. 391, 406 A.2d 337 (1979); *Commonwealth v. Stackpole,* 275 Pa.Superior Ct. 255, 418 A.2d 709 (1980). However, the *Webster* Court, citing judicial economy as the motivating factor, entertained the appeal and treated the PCHA court's order denying the other issues raised in the PCHA petition as if it were an order denying post-trial motions.

tioner the right to file an appeal *nunc pro tunc.*[8] On the other hand, the *Valezquez* case written by our Superior Court, has been interpreted as meaning that the PCHA court should first decide the deprivation of appellate rights argument and then go on to address all other underlying claims. By utilizing the *Valezquez* approach it was believed that "the entire matter [could] be adequately accommodated within the rubric of the PCHA without any need for the dubious method of having lower court judges 'relist' appeals in this court." *Id.* 244 Pa.Super. at 330, 368 A.2d at 746. Following this reasoning, the *nunc pro tunc* appeal based upon the deprivation of appellate rights would be unavailable to petitioner; instead, he would appeal from an adverse order of the PCHA court. Subsequent decisions by our Supreme Court in the area of *nunc pro tunc* appeals [9] have reaffirmed the procedure outlined in *Webster*, thereby registering implicit disapproval of the procedure advocated in *Valezquez* and those cases adopting the *Valezquez* position.[10]

 Thus, when beginning to review a petition alleging the deprivation of appellate rights, the PCHA court must act in accordance with the general procedural framework set forth in *Webster.*[11] That is, once the PCHA court deter-

**8.** In this event, although one appeal is possible by the petitioner, the remaining issues may be inadequate on the record for final disposition, making it necessary for a remand to be ordered so that an adequate record is made.

**9.** *See, e.g., Commonwealth v. James,* 484 Pa. 180, 398 A.2d 1003 (1979); *Commonwealth v. Morris,* 486 Pa. 391, 406 A.2d 337 (1979); *Commonwealth v. Westbrook,* 484 Pa. 534, 400 A.2d 160 (1979); *Commonwealth v. Dixon,* 475 Pa. 365, 380 A.2d 765 (1977); *Commonwealth v. Fauntroy,* 475 Pa. 287, 380 A.2d 357 (1977); *Commonwealth v. Gaston,* 474 Pa. 218, 378 A.2d 297 (1977); *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (1977). *See also Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981).

**10.** To date, only two cases apply the procedure advocated in *Valezquez: Commonwealth v. Harper,* 273 Pa.Superior Ct. 426, 417 A.2d 722 (1980); and *Commonwealth v. Butler,* 261 Pa.Superior Ct. 486, 395 A.2d 1015 (1978).

**11.** The progenitors of *Webster* aid in explaining the underlying rationale for the procedural approach advocated in *Webster,* including the remedial grant of the *nunc pro tunc* appeal. From these early

mines petitioner has been deprived of his appellate rights, it should refrain from ruling upon the merits of the other claims and should grant petitioner the right to file an appeal *nunc pro tunc*.[12] The *Webster* holding, however, did not anticipate the problem of an incomplete record on appellate review when the remaining issues were not reviewed by the PCHA courts. The problem was resolved in *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977).[13] Therein the Supreme Court created an exception to the general rule it had established in *Webster* when it wrote:

> cases, we can resolve that the PCHA court is permitted to function as the court of last review in the *Valesquez* sense only in the very limited set of circumstances where the claims raised are equally cognizable on direct review and on PCHA review. In all other instances, the petitioner is to be afforded full review by the appellate court, thus assuring that petitioner will not be deprived of his right to a direct appeal. See *e.g., Commonwealth v. Walker*, 460 Pa. 658, 334 A.2d 282 (1975); *Commonwealth v. Hayes*, 462 Pa. 291, 341 A.2d 85 (1975); *Commonwealth v. Faison*, 437 Pa. 432, 264 A.2d 394 (1970); *Commonwealth v. Musser*, 437 Pa. 131, 262 A.2d 678 (1970); *Commonwealth v. Lowery*, 438 Pa. 89, 263 A.2d 332 (1970).

12. Following the decision in *Webster*, the authority of the PCHA court to grant appeal rights, *nunc pro tunc* was seriously questioned. The question, however, was decided in *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977), where the Pennsylvania Supreme Court held that "the proper remedy is to afford appellant a new appeal in which he may reassert the issues adversely affected" by the original denial of his appellate rights. *Id.*, 472 Pa. at 143–44, 371 A.2d at 475–76. See *Commonwealth v. Lee*, 494 Pa. 216, 431 A.2d 226 (1981) (PCHA court may grant *nunc pro tunc* rights); *Commonwealth v. James*, 484 Pa. 180, 398 A.2d 1003 (1979) (trial court does have authority to determine appellate counsel's ineffectiveness; *Commonwealth v. Faison*, 437 Pa. 432, 436 n. 4, 264 A.2d 394, 396 n. 4 (1970) (where there has been a judicial determination that appellant has been denied his appeal rights, a *nunc pro tunc* appeal is in order. See also *Commonwealth v. Reidenbaugh*, 266 Pa.Superior Ct. 315, 404 A.2d 697 (1978) (*nunc pro tunc* rights the proper remedy to be afforded by PCHA court); *Commonwealth v. Cute*, 249 Superior Ct. 492, 500 n. 11, 378 A.2d 403, 407 n. 11 (1977) (PCHA court possesses authority to grant motions or petitions *nunc pro tunc*).

13. In *Sullivan*, appellant was convicted of two counts of murder in the first degree and was sentenced, filed post trial motions which were denied, took an appeal to the Pennsylvania Supreme Court which affirmed the judgments of sentence, filed a PCHA petition alleging, *inter alia*, ineffectiveness of appellate counsel, and was granted the right to file an appeal *nunc pro tunc*.

We have since stated that the preferred practice is for a Post Conviction Hearing Court, having determined that petitioner is entitled to a direct appeal, to refrain from ruling upon the merits of the remaining claims for relief because they will be reviewable on the direct appeal process (citation omitted). The only justification for a deviation from this practice is when the trial record is inadequate to provide a basis for review of the claim or where the claim was not ruled upon by the trial court.

*Id.,* 472 Pa. at 140 n. 5, 371 A.2d at 473 n. 5.

With the *Sullivan* decision, then, it is clear that the PCHA court must address the other claims raised in the PCHA petition when it is necessary to complete the record for appellate review; but under these circumstances, the PCHA court is merely functioning as an evidentiary tribunal. Implicit in *Sullivan's* rationale is the directive that proceedings in the PCHA court relating to issues other than the one involving lack of appellate rights, are not to be decided on the merits, but rather the PCHA court is to see to it that the record is made complete on these issues for the purpose of review in the appellate court on the *nunc pro tunc* appeal. Thus, all supplemental issues raised, reviewed, and ruled upon in the PCHA proceedings would be adequate for review in the *nunc pro tunc* appeal before us; in other words, only one appeal, the *nunc pro tunc* appeal from the judgment of sentence, would be presented to us.

For example, a situation may arise where the PCHA petitioner in addition to alleging appellate counsel's ineffectiveness has also alleged several instances of trial counsel's ineffective stewardship. If a record is incomplete before the PCHA court, and no hearing on the claims raised in connection with trial counsel's stewardship occurs, then the appellate court would be unable to deal with these claims if they were subsequently raised in the *nunc pro tunc* appeal.[14]

14. And, failure to raise trial counsel's ineffectiveness at this point in the *nunc pro tunc* appeal, would be viewed as a waiver in any subsequent court proceedings, since the *nunc pro tunc* appeal would be technically considered the first available opportunity to present the matter. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435

Without the benefit of a complete record, the appellate court would, of course, find it necessary to remand the case for an evidentiary hearing on any possibly meritorious ineffectiveness claim, thereby further complicating and delaying final disposition of the matter.

Another example is where the PCHA petitioner, in addition to alleging denial of appellate rights, also alleges in his petition other errors which, because of extraordinary circumstances, are specifically permitted to be raised for the first time at the PCHA level by virtue of section 1180-3 of the Act, *i.e.* after discovered evidence, the use of coerced confession, an infringement of the privilege against self incrimination.[15] Where these issues were not presented below, the PCHA court must review them, deciding if the issues are waived, and if not waived, reaching the merits. Absent such a review by the PCHA court, the appellate court, when faced with these same issues in the *nunc pro tunc* appeal, would be without the benefit of a lower court ruling. *Sullivan* obviously cures both of the problems outlined in the above two examples.

■ Where petitioner raises a deprivation of appellate rights claim in his PCHA petition, and the PCHA court finds the claim meritorious, then the function of the court *is* limited by the procedural guidelines of *Webster* and *Sullivan.* That is, once the PCHA court decides the accuracy of the deprivation of appellate rights claim and grants the *nunc pro tunc* appeal, its review of any remaining claims would not be considered final review of the issues, but would only be seen as serving the evidentiary purpose of completing the record for appellate review. As such, the evidentiary review would not result in a separate appealable order. The outcome of this situation would instead result in the

(1975); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977).

**15.** These issues permitted by Section 1180-3 of the Act are examples of issues "cognizable in collateral review" of which *Commonwealth v. Faison,* 437 Pa. 432, 264 A.2d 394 (1970), spoke. Failure to raise them in the PCHA petition would, according to *Faison,* be a "knowing waiver" and preclude further appellate review.

filing of the *nunc pro tunc* appeal, where petitioner could raise all issues which have been adequately preserved, and where he would have the benefit of final review by the traditional appellate tribunal.

Although appellant may raise in the appeal *nunc pro tunc* those issues which ordinarily might have been pressed on a timely appeal, *Commonwealth v. Faison*, 437 Pa. 432, 439, 264 A.2d 394, 398 (1970), the ordinary standards governing the scope of appellate review are complicated by the time interval between the judgment of sentence and the *nunc pro tunc* appeal: that is, (1) intervening court decisions which declare new rights, constitutional or otherwise, may affect the grounds of appellant's *nunc pro tunc* appeal by providing a basis for relief which was not available during appellant's original appeal period; and (2) post-conviction or collateral proceedings initiated by appellant between sentence and appeal may affect those issues which he may properly press on appeal. *Id.*, 437 Pa. at 440–41, 264 A.2d at 398–99. As to the first factor, the *Faison* court held that "an appellant may press on a *nunc pro tunc* appeal an issue premised upon a constitutional right which was enunciated subsequent to his original judgment of sentence, provided that this right has been given such retroactive effect that it would have been available to appellant had an appeal been timely filed." *Id.*, 437 Pa. at 441, 264 A.2d at 399. Regarding the second problem, the *Faison* court examined the doctrines of waiver and finality, in relation to intervening collateral proceedings brought by appellant while represented by counsel, and held that "final litigation or a knowing waiver of an issue cognizable in collateral proceedings will preclude consideration of such issues in an appeal *nunc pro tunc.*" *Id.*

■ Researching the instant *"Nunc Pro Tunc* problem," we find that the *nunc pro tunc* appeal is not the exclusive remedy granted when it has been decided that the PCHA petitioner has been denied his appeal rights. In some instances, the more appropriate remedy is to permit the *nunc pro tunc* filing of post-verdict motions. *See Commonwealth v. Webster, supra.* Apparently, the proper remedial relief is

dictated by the procedural background of the particular case under review by the PCHA court. In this regard, three factual patterns can be isolated.

*First Pattern*: Post verdict motions filed and denied. Appeal filed and judgment of sentence affirmed. PCHA petition filed alleging, *inter alia*, ineffectiveness of appellate counsel. *Nunc pro tunc* appeal granted. *See e.g. Commonwealth v. Sullivan, supra. See also Commonwealth v. Valequez, supra,*

*Second Pattern*: Post-verdict motions filed and denied. No appeal taken. PCHA petition filed alleging, *inter alia*, denial of appellate rights. *Nunc pro tunc* appeal granted. *See e.g. Commonwealth v. Westbrook*, 484 Pa. 534, 400 A.2d 160 (1979); *Commonwealth v. Fauntroy*, 475 Pa. 287, 380 A.2d 357 (1977); *Commonwealth v. Drummond*, 238 Pa.Superior Ct. 311, 357 A.2d 600 (1976).

*Third Pattern*: No post verdict motions filed. No appeal taken. PCHA petition filed alleging, *inter alia*, denial of appellate rights. *Nunc pro tunc* filing of post-trial motions granted. *See e.g. Commonwealth v. Morris*, 486 Pa. 391, 406 A.2d 337 (1979); *Commonwealth v. Stackpole*, 275 Pa.Superior Ct. 255, 418 A.2d 709 (1980).

The filing or the absence of filing of post-verdict motions are the crucial factors in determining remedial relief. The importance assigned to post-verdict motions in this setting is indicative of their significance in the overall appellate scheme. Where post-verdict motions have not been filed, as is the situation outlined in the third factual pattern, the PCHA court, upon determining that petitioner has been denied his appellate rights, is to permit the filing and argument of such post verdict motions. All claims, including counts of trial counsel's ineffectiveness, which would be cognizable on direct appeal should and must be raised in the *nunc pro tunc* post verdict motions and counsel should be charged with the knowledge that the appellate court will not consider an issue on appeal that has not been adequately preserved below. With the filing of the *nunc pro tunc* post-verdict motions, the appeal process would then proceed

along its normal course. On the other hand, where post-verdict motions have already been filed and argued, as is the case in the first and second factual patterns, a presumption exists in favor of their validity and correspondingly, in favor of counsel's effectiveness in preparing them. In this situation, that is where post-verdict motions have been filed, the remedy afforded by the PCHA court is the grant of a *nunc pro tunc* appeal.

Since the holding of *Webster* and *Sullivan*, it is clear that a policy has taken shape, based upon the tenets of the Post Conviction Hearing Act and the principle of finality of judgments. All issues, including those preserved in post verdict motions and those presented in the PCHA petition, are cognizable in the *nunc pro tunc* appeal, thus allowing petitioner the original benefit of review by an appellate court which was earlier denied him, for one reason or another. Moreover, from *Webster* and its progeny it is clear that the judiciary, recognizing the importance the appeal process plays in criminal litigation, is determined to ensure the criminal defendant that he will not be deprived an appeal because of faulty stewardship or errors committed by the lower court.

## II. Appellant's Issues on Appeal Other Than Deprivation of Appellate Rights.

The procedural history of the instant case reveals that post-trial motions were filed and denied. Therefore, it was proper for the PCHA court to grant the *nunc pro tunc* appeal once it determined that petitioner's deprivation of appellate rights claim was meritorious. Moreover, we have a complete record and can address each of the specific allegations raised by appellant. In this *nunc pro tunc* appeal, appellant can and has raised issues which he might have ordinarily pressed on a timely appeal. We shall now consider those specific arguments. Appellant first questions the dismissal of his Rule 1100(f) application by the pre-trial hearing judge, who determined that because 108 days were chargeable against appellant due to his unavailability, no infraction of the 180 day rule had occurred. The procedural

history of the case follows: A complaint was filed against appellant on June 8, 1976, clocking the Rule 1100 run date at December 5, 1976. The case was listed for trial November 15, 1976, at which time appellant petitioned for a remand for a preliminary hearing, which was granted. A hearing was held, the case returned, a new information filed, appellant was arraigned and the case listed for trial on February 14, 1977. Trial was finally conducted on February 23, 1977, or two hundred and sixty days following the filing of the June 8, 1976, criminal complaint. Earlier, on February 10, 1977, appellant had filed a petition to dismiss the charges, alleging a Rule 1100 violation. Thereafter, two hearings were held on the petition, the first on February 14th and the second on February 22nd. The record reflects that the Commonwealth did not file a petition to extend, but rather relied upon the exclusionary provision set forth in Pa.R.Crim.P. 1100(d)(1), asserting that there was full compliance with that Rule. The Rule in pertinent part reads:

(d) in determining the period for commencement of trial, there shall be excluded therefrom such periods of delay in any stage of the proceedings as results from:

(1) the unavailability of the defendant or his attorney.

The Commonwealth maintained that appellant's whereabouts were unknown from the date of the filing of the criminal complaint until September 23, 1976, the date the Commonwealth received notice of his availability for extradition.

In order to avail itself of the Rule 1100(d)(1) exclusion, the Commonwealth was required to prove by a preponderance of the evidence that appellant's whereabouts were unknown and that due diligence was utilized in locating and apprehending appellant, *Commonwealth v. Brinton*, 275 Pa. Superior Ct. 304, 418 A.2d 734 (1979); *Commonwealth v. Hinton*, 269 Pa.Superior Ct. 43, 409 A.2d 54 (1979). The record in the instant case confirms the lower court's ruling that due diligence was exercised by the Commonwealth. In point of fact, testimony offered at the two hearings on appellant's petition for dismissal established: (1) that the

police attempted many times to locate appellant at his last known address as well as at several other addresses subsequently supplied to the police; (2) that the police checked appellant's place of employment but learned that appellant had failed to return after the June 7, 1976 commission of the crime; (3) that the police inquired of appellant's whereabouts at his mother's residence; (4) that the police check of appellant's motor vehicle registration produced yet another address which was investigated with no success; (5) that the police completed a National Crime Information Center teletype on June 8, 1976; (6) that police contacted appellant's girlfriend in New York and checked several addresses in that state; (8) that on September 23, 1976, the police received information from Holyhoke, Massachusetts that appellant had been taken into custody on an unrelated matter, and a fugitive warrant was issued for him; and (8) that appellant was finally returned to Berks County on October 18, 1976, by the Sheriff's Department. The Commonwealth is not required to exhaust every conceivable method of locating a defendant. The standard of due diligence demands only that reasonable efforts be undertaken. *Commonwealth v. Brinton, supra; Commonwealth v. Hinton, supra; Commonwealth v. Jones*, 256 Pa.Superior Ct. 366, 389 A.2d 1167 (1978). This standard has been met in the present case; therefore, the delay prior to arrest was properly excluded. With the exclusion of this period, it is clear that appellant's trial was commenced within the prescribed time period allowed.[16]

As a second point of error, appellant claims that the sentences imposed were illegal in that the offenses merged. As to crimes directed against the first victim, Haywood Floyd, appellant was sentenced to a term of five to ten years on the charge of criminal attempt (murder), two to five years on the count of aggravated assault and one to three years on the count of recklessly endangering. The sentences

16. Charging the 108 days appellant was unavailable against appellant extends the trial date to March 23, 1977. Appellant came to trial on February 23, 1977.

imposed on the counts of aggravated assault and recklessly endangering were to run concurrently with the sentence imposed on the charge of criminal attempt (murder). As to the crimes directed against the second victim, Linda Burford, appellant was sentenced to a term of two to five years on the count of aggravated assault and one to three years on the charge of reckless endangerment. Both these sentences were to run concurrently with the sentence imposed on the conviction of the attempted murder of Haywood Floyd.[17]

Critical to determining this issue is a factual recitation of the events of the crime, because whether a merger may be found in the instant case first involves the question of whether there were one or more acts. *See Commonwealth v. Buser*, 277 Pa.Superior Ct. 451, 419 A.2d 1233 (1980); *Commonwealth v. Olsen*, 247 Pa.Superior Ct. 513, 372 A.2d 1207 (1977), *remanded on other grounds*, 487 Pa. 499, 410 A.2d 299 (1980). Succinctly stated, "The merger of sentences doctrine is concerned not with conviction but punishment; its purpose is to preclude the imposition of separate punishments for what in practical effect was but a single criminal act. Thus, in merger of sentence cases, we focus not only on the similarity of the elements of the crimes but also, and primarily, on the facts proved at trial, for the question is whether those facts show that in practical effect the defendant committed a single criminal act, in which case there will be merger and only a single sentence may be imposed, or more than a single act, in which case there will be no merger and a sentence may be imposed for each act." *Commonwealth v. Crocker*, 280 Pa.Superior Ct. 470, 475, 421 A.2d 818, 820–21 (1980). Herein, the record reveals that on the evening of June 8, 1976, at approximately 10:00 p. m., appellant stood outside the front door of the home of Linda D. Burford and requested that she let him in to discuss

17. Because illegality of sentence is not a waivable issue, *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976); *Commonwealth v. Guenzer*, 255 Pa.Superior Ct. 587, 389 A.2d 133 (1978), appellant's failure to raise this issue below does not preclude our present consideration of it. *Commonwealth v. Usher*, 246 Pa.Superior Ct. 602, 371 A.2d 995 (1977); *Commonwealth v. Welch*, 291 Pa.Superior Ct. 1, 435 A.2d 189 (1981).

certain personal matters. Ms. Burford stood directly on the other side of the screen door and told appellant that she did not wish to speak to him.

While this confrontation was occurring, Haywood E. Floyd, an acquaintance of Ms. Burford, was taking a bath in the second floor bathroom of the home. When he heard Ms. Burford say, "No, no, no," in a raised voice, he hurriedly dressed, and joined Ms. Burford at the front door. Mr. Floyd told Ms. Burford to move away from the door and advised appellant that he would not be able to talk with Ms. Burford since she did not wish to speak to him. Appellant said to Mr. Floyd, "I don't wish to talk with you," and Mr. Floyd replied, "Well, I'm the only thing standing here at this front door, and I'm the only one you're going to talk to because she doesn't wish to talk to you." Appellant then repeated, "Man, I don't want to talk to you." Mr. Floyd, recognizing that appellant was upset, opened the door and began to exit. At this point, appellant stepped back, said to Mr. Floyd, "I'll kill you mother fucker," produced a shotgun from behind his back, and shot Floyd in the arm and abdomen. Regarding this first shot, Ms. Burford, who had stepped a few feet inside the house, away from the door, testified that she heard a shot, saw a flash, and "felt like a stinging on the lower part of my body." She sustained injuries to her lungs, breast and liver.

Mr. Floyd then asked appellant, "Why did you shoot me?" to which appellant replied, "Shut up or I'll shoot you again." Floyd said, "Hey man, you don't have to shoot me. You don't need a gun to begin with." Appellant then raised the gun and positioned it as if he were going to take another shot at Mr. Floyd, but instead, he took a couple of steps over to the front window, slammed back the gun bolt and fired at Ms. Burford. Appellant then withdrew the gun, pulled the bolt back again, thrust the gun through the window a second time and fired another shot. Ms. Burford testified that she fell unconscious after the second shot and awoke in a hospital.

The seminal case of *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 21 A.2d 920 (1941), established that for crimes to merge, one must "necessarily involve" the other:

> The true test of whether one criminal offense has merged into another . . . is whether one crime necessarily involves another, as, for example, rape involves fornication, and robbery involves both assault and larceny. The 'same transaction' test is valid only when the 'transaction' means a *single act*. When the 'transaction' consists of two or more criminal acts, the fact that the two acts are 'successive' does not require the conclusion that they have merged. Two crimes *may be* successive steps in *one* crime and therefore merge, . . . or they may be two distinct crimes which do not merge. *Id.*, 343 Pa. at 104–105, 21 A.2d at 921. (emphasis in original)

Following this test, it has been noted that for two crimes to merge "they must be part of the same act." *Commonwealth v. Wojciechowski*, 285 Pa.Superior Ct. 1, 426 A.2d 674 (1981); *Commonwealth v. Olsen, supra*. In this case, the evidence clearly established that more than one act had taken place. Accordingly, appellant could be prosecuted and sentenced for each separate act. That is, the first act occurred when appellant said, "I'll kill you," produced a gun from behind his back, and fired a shot, severely injuring both Mr. Floyd and Ms. Burford; this act supported the sentences imposed for the crime of aggravated assault as to the victim, Ms. Burford, and the crime of attempted murder as to the victim, Mr. Floyd. A second act occurred after Mr. Floyd questioned appellant's motives for his violent action, and appellant replied, "Shut up or I'll shoot you again . . . Shut up or I'll kill you," positioned the gun as if he were going to fire another shot into Mr. Floyd, but instead, moved a few steps over to the front window, slammed back the gun bolt and fired through the window at Ms. Burford; this act supported the sentences imposed for the crime of recklessly endangering as to the victim, Ms. Burford, as well as to the victim, Mr. Floyd. However, no independent acts can be

found to support the sentence imposed for the crime of aggravated assault as to the victim, Mr. Floyd, and appellant's merger argument is meritorious with respect to the sentence imposed for this crime. Applying the test enunciated in *Commonwealth v. Moszczynski, supra* to the present facts, it is clear that appellant's conviction for aggravated assault [18] merges with the conviction for criminal attempt (murder) for sentencing purposes.[19] After the attempt to commit murder was established, no additional facts were required to prove aggravated assault. *See Commonwealth v. Musselman,* 483 Pa. 245, 396 A.2d 625 (1979) (crimes of aggravated assault and recklessly endangering another are lesser included offenses of murder). Accordingly, the judgment of sentence for aggravated assault must be vacated. In this situation, where we cannot determine whether the declared invalidity of a conviction on one count may have affected the lower court's sentencing on the remaining counts, we must remand to give the lower court an opportunity to reconsider sentencing on all counts. *See Common-*

---

**18.** Aggravated Assault is defined as:

A person is guilty of aggravated assault if he: (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon, 18 Pa.C.S. § 2702(a)(4) (1973).

**19.** Criminal attempt is defined as:

A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S. § 901(a) (1973).

Criminal Homicide is defined as:

A person is guilty of criminal homicide if he intentionally, know- ingly, recklessly or negligently causes the death of another. 18 Pa.C.S. § 2501(a).

Murder is defined as:

(a) Murder of the first degree.—A criminal homicide constitutes murder of the first degree when it is committed by means of poison, or by lying in wait, or by any other kinds of willful, deliberate, and premeditated killing. A criminal homicide constitutes murder of the first degree if the actor is engaged in or is an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary, or kidnapping.

(b) Murder of the second degree.—All other kinds of murder shall be of the second degree. Murder of the second degree is a felony of the first degree. 18 Pa.C.S. § 2502.

*wealth v. Shilling, supra; Commonwealth v. Lezinsky,* 264 Pa.Superior Ct. 476, 400 A.2d 184 (1979); *Commonwealth v. Bailey,* 250 Pa.Superior Ct. 402, 378 A.2d 998 (1977).[20]

Case remanded to the lower court for resentencing in accordance with this opinion.

**20.** Our resolution of appellant's merger issue eliminates the necessity of reviewing appellant's final point of error asserting the failure of the lower court to comply with the sentencing procedures outlined in *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977). We do note, however, that when reconsidering the sentence on remand the lower court must follow the *Riggins',* on the record disclosure rule.