J-S24007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDALL DOUGLAS BROOKS | : | |
| | : | |
| Appellant | : | No. 815 MDA 2022 |

Appeal from the PCRA Order Entered May 9, 2022
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000141-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDALL DOUGLAS BROOKS | : | |
| | : | |
| Appellant | : | No. 816 MDA 2022 |

Appeal from the PCRA Order Entered May 9, 2022
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0002130-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDALL DOUGLAS BROOKS | : | |
| | : | |
| Appellant | : | No. 817 MDA 2022 |

Appeal from the PCRA Order Entered May 9, 2022
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001515-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |

|  | : |  |
| --- | --- | --- |
| v. | : |  |
|  | : |  |
|  | : |  |
| RANDALL DOUGLAS BROOKS | : |  |
|  | : |  |
| Appellant | : | No. 818 MDA 2022 |

Appeal from the PCRA Order Entered May 9, 2022
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000568-2011

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
|  | : | PENNSYLVANIA |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
| RANDALL D. BROOKS | : |  |
|  | : |  |
| Appellant | : | No. 819 MDA 2022 |

Appeal from the PCRA Order Entered May 9, 2022
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001927-2010

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED SEPTEMBER 5, 2023**

Appellant, Randall Douglas Brooks, appeals from the post-conviction court's May 9, 2022 order denying in part, and granting in part, his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we are constrained to quash this appeal.

The PCRA court summarized the pertinent facts and procedural history of this case, as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

On April 20, 2012, [Appellant] … was found guilty[, in five separate cases that were consolidated for trial,] of attempted murder and numerous other criminal charges stemming from his alleged conduct during the early morning hours of December 29, 2009. During that incident, according to prosecutors, he pulled up alongside a vehicle being driven by a Matthew Ross and fired three shots into [Mr.] Ross's vehicle, one of which struck Mr. Ross in the left shoulder. Apparently, [Appellant] was angered by the ending of his romantic relationship with one[] Jessica Rooney, and her subsequent relationship with Mr. Ross. The other charges in the case stemmed from conduct directed toward Ms. Rooney and Mr. Ross[,] both prior to and after the shooting.

At his trial, [Appellant] chose to represent himself. Karen Muir[,] Esq.[,] served as standby counsel. [Appellant] was found guilty of the charges[,] and on July 3[], 2012, the trial judge, [the] Hon[orable] Bradley P. Lunsford, sentenced … [Appellant] to an aggregate term of 35 to 73 years in prison. On appeal, the Superior Court remanded the matter for resentencing, concluding that the jury had failed to make the requisite factual finding of serious bodily injury with respect to at least one of the charges. [*See Commonwealth v. Brooks*, 122 A.3d 1120 (Pa. Super. 2015) (unpublished memorandum).] Judge Lunsford retired from the Bench in 2015. On July 13, 2016, … [Appellant] was resentenced before the Honorable Johnathan Grine to an aggregate sentence of 28 to 56 years. There then followed a post-sentence motion challenging the grading of an offense of stalking. In response, and after granting [Appellant's] motion on December 6[], 2016, Judge Grine resentenced [Appellant] to a term of 27 years [and] 3 months to 54 years and 6 months. Following a withdrawal of counsel, Steven Trialonis, Esq.[,] was appointed to represent [Appellant]. He filed a post-sentence motion[,] which was denied by operation of law on September 6, 2017. In his motion, Attorney Trialonis asserted that the trial court had incorrectly applied an offense gravity score of 14 on the offense of [a]ttempted murder and had abused its discretion by increasing the sentence following remand from the Superior Court. On a subsequent appeal, the Superior Court found that the brief filed on behalf of [Appellant] failed to contain a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentencing[,] and … [Appellant's] entire appeal was dismissed. [*See Commonwealth v. Brooks*, 195 A.3d 1051 (Pa. Super. 2018) (unpublished memorandum).]

- 3 -

Discretionary review was not sought in the Pennsylvania Supreme Court.

The aforementioned Superior Court dismissal was by way of an unpublished memorandum decision dated August 31, 201[8]. The instant PCRA petition, initially *pro se*, was [timely] filed in September of 2019.

PCRA Court Opinion (PCO), 5/9/22, at 1-2.

In Appellant's 2019 PCRA petition, he alleged that Judge Lunsford had engaged in *ex parte* communications with the prosecutor in Appellant's case, former District Attorney Stacy Parks Miller, "during the timeframe surrounding [Appellant's] attempted murder trial." ***Id.*** at 2. Appellant maintained that these *ex parte* communications violated his constitutional rights, "which, in the circumstances of the particular case, so undermined the truth-determining process such that no reliable adjudication of guilt or innocence could have taken place." ***Id.*** at 5 (citing 42 Pa.C.S. § 9543(a)(2)(i)). Additionally, Appellant sought the reinstatement of his direct appeal rights, arguing that his counsel on his 2018 direct appeal, Attorney Trialonis, had acted ineffectively by not including a Rule 2119(f) statement in the appellate brief, thereby waiving Appellant's sentencing challenge for our review.

In ruling on Appellant's claims, the PCRA court first addressed his allegation that there were *ex parte* communications between Judge Lunsford and Ms. Parks Miller:

In the course of the development of a factual record in [an unrelated] case [alleging *ex parte* communications between Judge Lunsford and Ms. Parks Miller], … an affidavit was taken from Maggie Miller, a Centre County Court Reporter concerning the trial of [Appellant], the matter *sub judice*. Again, as noted in the PCRA [p]etition and consistent with the transcript appended thereto, Ms.

- 4 -

Miller testified that "during a recess in trial in the instant matter, presiding [J]udge … Lunsford told her that he and [Ms.] Parks Miller were texting one another. According to Ms. Millers [*sic*] affidavits, during the break[,] Judge Lunsford stated to Ms. Miller that Ms. Parks Miller (the DA who was trying the case) was "bitching to him" in text messages about the way [Judge] Lunsford was handling some objections and handling the trial…. Ms. Miller stated in her affidavit that she was disgusted by what Judge Lunsford had revealed to her and approached [Judge] Lunsford's secretary, Joan Parsons[,] who informed her that [Judge] Lunsford would regularly bring his cell phone to the bench and that Ms. Parson's [*sic*] also viewed it as a problem.[] Thus[,] it is fair to conclude that[,] in the instant case[,] there were *ex parte* text communications between the District Attorney and the trial judge[,] and that at least some of those communications involved the trial of [Appellant].

*Id.* at 4-5.

However, the court ultimately disagreed "that the law requires or even suggests that the ethical improprieties in this case entitle [Appellant], *per se*, to a new trial." *Id.* at 6. The court explained:

The rule appears to be that even if there were *ex parte* communications, there is no basis for the grant of a new trial "in the absence of evidence of influence." **Com[monwealth v.] Barnyak**, 639 A.2d 40, 44 (Pa. Super. 1994). Admittedly, the **Barnyak** case does not cite to a wealth of appellate authority for this proposition. Nonetheless, it is an observation made by our Superior Court and one which common sense would seem to more than support. Texting involves "communication" and is by any understanding improper when conducted *ex parte* between a judge and attorney during the course of a trial. On the other hand, messages sent do not, in and of themselves, evidence an understanding that the judge has agreed to act improperly or even favorably to the party sending them. In fact, the messages sent in this case, as reported by Ms. Miller, were complaints that the judge's trial rulings were not to the Commonwealth's liking.

We have reviewed the lengthy transcribed record of the trial in this case. In our view, Judge Lunsford navigated the shoals between a vigorous and sometime petulant prosecutor and an untrained *pro se* litigant with impartiality. We are unable to

discern any evidence of an improper outside influence, let alone one that proved detrimental to [Appellant]. In fact, Judge Lunsford dealt with … [Appellant's] legal missteps with considerable patience and equity. We can find no evidence of bias in either his rulings or his charge to the jury. Thus, we find no reason to require a new trial.

*Id.* at 6-7 (footnote omitted).

The PCRA court then went on to address Appellant's request for the reinstatement of his direct appeal rights based on Attorney Trialonis's ineffectiveness, stating:

The only other issue pursued by … [Appellant] at our recent hearing involved a claim of the ineffective assistance of prior appellate counsel. Specifically, counsel is faulted for failing to file a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of [Appellant's] sentence. The Commonwealth has not taken issue with … [Appellant's] contention that prior counsel's failure to include a Pa.R.A.P. 2119(f) statement did, in fact, cause the Superior Court to conclude that all claims raised by appellate counsel were waived. Our courts have distinguished between situations where counsel's ineffectiveness may have waived one or more issues, and where it entirely denies the [p]etitioner's right of direct appeal. *See Commonwealth v. Halley*, 870 A.2d 795 (Pa.[] 2005). In the latter instance, counsel's inactions have been deemed to be ineffective *per se*, entitling the defendant to an appeal *nunc pro tunc*. *Id.* at 801. Accordingly, we will reinstate [Appellant's] right of direct appeal.

*Id.* at 7.

Ultimately, the PCRA court entered the following order, which was filed on May 9, 2022, disposing of Appellant's petition:

AND NOW, this 29th day of April, 2022, the Petition of the Defendant for Post-Conviction Collateral Relief in the nature of a request for a new trial is DENIED. The PCRA Petition of the Defendant in the nature of a request for reinstatement of his right to appeal is GRANTED and his right to file a Direct Appeal is REINSTATED *nunc pro tunc*.

- 6 -

Order, 5/9/22, at 1 (single page).

On May 24, 2022, Appellant filed five notices of appeal, one for each docket number, from the court's May 9, 2022 PCRA order denying, in part, his PCRA petition. *See Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018) (holding that "the proper practice under Rule 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket"). Each notice of appeal has a different trial court docket number in its caption, with the other four consolidated docket numbers listed below.[1] The notices were docketed in this Court at Nos. 815-819 MDA 2022, and were consolidated, *sua sponte*, by order of September 27, 2022. Appellant timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise

_____

[1] Because Appellant's five notices of appeal contain multiple docket numbers, this Court's rulings in *Commonwealth v. Creese*, 216 A.3d 1142, 1144 (Pa. Super. 2019), and *Commonwealth v. Johnson*, 236 A.3d 1141 (Pa. Super. 2020) (*en banc*), are implicated. In *Creese*, a panel of this Court construed *Walker* to mean that this Court "may not accept a notice of appeal listing multiple docket numbers, even if those notices are included in the records of each case[,]" and that "a notice of appeal may contain only one docket number." *Creese*, 216 A.3d at 1144. But that pronouncement was expressly overruled in *Johnson*, where this Court held that although the appellant filed multiple notices of appeal, each listing multiple lower court docket numbers, the appeals should not be quashed because the appellant filed an appropriate number of appeals. *Johnson*, 236 A.3d at 1148. The *Johnson* panel was also persuaded by the fact that the appellant had italicized only one trial court docket number in each notice of appeal, noting that this made it clear that the clerk of courts did not play a role in typing separate notices of appeal. *Id.*

Here, Appellant filed the appropriate number of notices of appeal, with each one bearing a "lead" docket number and four other docket numbers appearing below it. Because Appellant filed the appropriate number of notices of appeal, we conclude that quashal is unwarranted under our rationale in *Johnson*.

statement of errors complained of on appeal, and the court thereafter filed a Rule 1925(a) statement indicating that it was relying on the rationale set forth in the opinion accompanying its May 9, 2022 order.

In Appellant's brief, he raises two issues for our review:

1. Whether the [PCRA] court erred as a matter of law when it utilized "harmless error" analysis after concluding there were *ex parte* text message communications between the Centre County District Attorney and the trial judge during trial in the instant matter and that "at least some" of this *ex parte* communication involved the trial of Appellant?

2. Whether the trial court erred as a matter of law when it denied Appellant's [PCRA] claim that his conviction resulted from a violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the instant case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place where the PCRA court concluded there were *ex parte* … text message communications between the Centre County District Attorney and the trial judge during trial in the instant matter and that "at least some" of this *ex parte* communication involved the trial of Appellant?

Appellant's Brief at 7 (unnecessary capitalization omitted).

Before we may address Appellant's issues, we must *sua sponte* consider whether we have jurisdiction over this appeal. **See Commonwealth v. James**, 69 A.3d 180, 184 (Pa. 2013) (stating an appellate court "may raise the issue of jurisdiction *sua sponte*") (citation omitted).

When a PCRA court lacks jurisdiction to consider the merits of a petition, we likewise lack jurisdiction to consider an appeal from disposition of the petition. **Commonwealth v. Hernandez**, 79 A.3d 649, 654 (Pa. Super.2013) (citation omitted). A PCRA court lacks jurisdiction to consider a PCRA petition when a petitioner's judgment is not final. **See Commonwealth v. Taylor**, 65 A.3d 462, 464 (Pa. Super. 2013) (citation omitted). Once [a] PCRA

court grant[s a petitioner] the right to seek further review *nunc pro tunc,* [the petitioner's] sentence [is] no longer final and the PCRA court lack[s] jurisdiction to rule on [the petitioner's] other requests for relief. ***See Commonwealth v. Donaghy****,* 33 A.3d 12, 14 n.5 (Pa. Super. 2011); ***see also*** [***Commonwealth v.***] ***Holmes****,* [79 A.3d 562 (Pa. 2013)]. Accordingly, until [a petitioner's] judgment of sentence becomes final in accordance with the procedural mechanisms recognized in 42 Pa.C.S.[] § 9545(b)(3), we lack jurisdiction to consider the merits of [the petitioner's] remaining … claims.

***Commonwealth v. Harris****,* 114 A.3d 1, 6 (Pa. Super. 2015).

As ***Harris*** makes clear, a PCRA court generally lacks jurisdiction to rule on the merits of a petitioner's remaining claims once the court has determined that the petitioner's direct appeal rights must be reinstated. Here, the PCRA court granted the reinstatement of Appellant's direct appeal rights, yet it then ruled on the merits of his *ex parte* communication claim by denying it. As the court lacked jurisdiction to rule on the merits of that claim, ***see id.***, this Court issued an order on September 30, 2022, directing Appellant to show cause why the instant appeals from the May 9, 2022 order denying the remainder of Appellant's PCRA claims should not be quashed.

Appellant filed responses on October 10th and 21st, 2022. In his October 10th response, Appellant explained that he no longer wishes to pursue a direct appeal challenging the discretionary aspects of his sentence; rather, Appellant wants review of the PCRA court's denial of his claim stemming from the *ex parte* communications. Appellant acknowledged ***Harris***, but argued that the exception in ***Holmes*** applies, which permits unitary review of ineffectiveness claims on direct appeal when accompanied by knowing, voluntary, and

- 9 -

express waiver of PCRA claims. Appellant contended that because he is willing to waive his right to a direct appeal *nunc pro tunc*, review of his remaining PCRA claim is permissible at this juncture. He further argued that quashing the appeal would not be judicially expedient, as it would necessitate the filing of a new PCRA petition, PCRA court opinion/order, and notices of appeal. Finally, Appellant argued that the instant matter is one of public importance because of the gravity of the issue, which this Court should review at the earliest opportunity. In Appellant's October 21st response, he provided a signed statement confirming that, although his direct appeal rights have been reinstated, he wishes to appeal from the denial of his remaining PCRA claim. By order of December 2, 2022, this Court discharged the show-cause order and referred the issue to this merits panel.

Under our rationale in **Harris**, we are compelled to disagree with Appellant that we may (or must) consider the merits of his challenge to the PCRA court's denial of his *ex parte* communication claim.[2] The PCRA court's May 9, 2022 opinion notes, with respect to Appellant's *ex parte* communications claim, "we find no reason to require a new trial." PCO at 7.

---

[2] **See also Commonwealth v. Miller**, 868 A.2d 578, 580-81 (Pa. Super. 2005) (acknowledging the confusion that results when a PCRA court reinstates direct appeal rights *nunc pro tunc* and is permitted to "address," but not "reach," the merits of any remaining PCRA claims, and suggesting that in such a scenario, the PCRA court should follow the procedure set forth in **Commonwealth v. Miranda**, 442 A.2d 1133 (Pa. Super. 1982), whereby the PCRA court may address the remaining claims to the extent necessary to provide a complete record for appellate review, but such review is merely "advisory" and is not considered final).

While this language could be interpreted as either "addressing" the issue or "reaching" the merits of the issue, the language in the accompanying PCRA order makes clear that the PCRA court intended to issue a ruling on the merits of that claim. *See* PCRA Court Order, 5/9/22, at 1 ("[T]he Petition of the Defendant for Post-Conviction Collateral Relief in the nature of a request for a new trial is DENIED."). However, the court's order also explicitly reinstated Appellant's direct appeal rights *nunc pro tunc*. *See id.* ("The PCRA Petition of the Defendant in the nature of a request for reinstatement of his right to appeal is GRANTED and his right to file a Direct Appeal is REINSTATED *nunc pro tunc*."). Pursuant to **Harris**, once the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*, it lacked jurisdiction to rule on the merits of his remaining claim. Thus, the ruling Appellant wishes to challenge via the instant appeals is a nullity.

While Appellant argued in his response to our rule to show cause that we should consider his *ex parte* communication claim under the rationale of **Holmes**, we disagree. The **Holmes** Court permitted review of

> multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, … but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

**Holmes**, 79 A.3d at 564 (footnote omitted). The purpose of **Holmes** was to "adopt a paradigm whereby unitary review may be available in such cases

only to the extent that it advances (and exhausts) PCRA review in time…." ***Id.***

*Holmes* clearly did not involve, or instruct on, the circumstances at hand, where a PCRA court reinstates the petitioner's direct appeal rights, yet proceeds to rule on the merits of other post-conviction claims. In cases such as this, ***Harris*** and ***Miller*** hold that the PCRA court lacks jurisdiction to rule on the remaining PCRA claims. Appellant's after-the-fact attempt to waive his right to the reinstated direct appeal does not create an exception to these decisions, or return jurisdiction to the PCRA court. Because the court lacked jurisdiction to rule on Appellant's *ex parte* communications claim, we likewise lack jurisdiction to consider his appeal from that disposition. ***See Harris***, 114 A.3d at 6. Consequently, we are compelled to quash Appellant's appeal.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/05/2023