**Commonwealth v. Hanna**

*Henry C. Haefner*, for defendant.
*Richard A. Sheetz, Jr., Assistant District Attorney*, for Commonwealth.

Before Eckman, J., and Perezous, J.

ECKMAN, *J.*, May 21, 1982—On May 8, 1981, defendant, Gerald Stanley Hanna, Sr., was arrested and charged with arson and related offenses.* Defendant filed an omnibus pretrial motion to suppress evidence on July 27, 1981. A suppression hearing was held on October 15, 1981, and defendant's motion was subsequently dismissed. Defendant proceeded to trial and was convicted by a jury on October 16, 1981. Timely post-trial motions in arrest of judgment and for a new trial were filed on October 20, 1981 and supplemented on February 4, 1982. Oral argument was held before the court en banc on March 31, 1982. Defendant's motions are now before the court for disposition.

Defendant has briefed only two of the issues raised in his post-trial motions. The remaining issue concerning the sufficiency of the evidence to support the jury verdict is deemed waived pursuant to Lancaster County Rule of Criminal Procedure No. 31D.

---

*The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, §1, 18 Pa.C.S. 3301(a).

On May 8, 1981, at approximately 3:30 a.m. Officers Arnold and Parsons of the Lancaster City Police Department were dispatched to investigate a possible arson at 747 Beaver Street in the City of Lancaster. Upon arrival, Officer Arnold observed a black scorch mark several feet high on the door to 747 Beaver Street and a bottle partially filled with kerosene on the front porch. A broken bottle and a large puddle of kerosene lay on the porch. Directly across the street Officer Arnold found another broken bottle inside a kerosene-soaked brown paper bag.

Officer Arnold spoke with the resident of the address, David Hackman. Hackman related that he had been awakened by a noise outside of the house. He observed smoke and could discern a flame by his front door. He opened the door and found a kerosene filled bottle with the wick still burning. Hackman, who managed the homes at 743, 745 and 747 Beaver Street, named defendant as a possible suspect because of a recent altercation that he had with him. Defendant rented the row house at 745 Beaver Street next to Hackman's residence. Hackman also stated that he had served an eviction notice on defendant and asked the officers if they would accompany him to see if defendant had removed himself from the premises. Hackman proceeded onto the porch of 745 Beaver Street accompanied by Officers Arnold and Parsons. By this time several firemen, the Lancaster Fire Marshall and another police officer had arrived at the scene and were standing about the steps and porch of 745 Beaver Street.

Hackman knocked on the door and called for Ruthetta Angelini, defendant's girlfriend, who also lived at that address. The front door was not secured but was opened slightly when Hackman knocked. Ms. Angelini answered the door and

Hackman inquired as to whether defendant had left the premises. After a short conversation with Hackman, Ms. Angelini opened the door the rest of the way and motioned for Hackman and the police officers to follow her. Ms. Angelini asked that everyone remain quiet since a man was asleep on a couch just inside the front door. She led Hackman and the officers to the kitchen which was the only lighted room on the first floor. There the officers observed in plain view several bottles and jars filled with kerosene along with a torn T-shirt. While the officers and fire marshall were in the kitchen, Roger Bays, another occupant, entered. Bays had an odor of kerosene about him and was subsequently read his Miranda warnings. Bays confessed that he and defendant had set the fire. Defendant, who was sleeping on the second floor, was arrested and taken to the Lancaster Police Station where he subsequently gave a statement to the State Police Fire Marshall.

Defendant initially contends that the evidence presented by the Commonwealth at the suppression hearing was insufficient to establish that defendant's girlfriend, Ruthetta Angelini, consented to the entry of Hackman and the police to defendant's residence where the incriminating evidence was found. He also contends that she lacked authority to consent to the entry. We will address the second issue first.

In addressing the issue of the legality of searches based on third party consent, courts have found " . . . that such consent may be given by one ['] who possessed common authority over or other sufficient relationship to the . . . effects sought to be inspected. [']" Commonwealth v. Silo, 480 Pa. 15, 389 A. 2d 62 (1978), cert. denied, Silo v. Pennsylvania, 439 U.S. 1132, 99 S.Ct. 1053, 59 L.Ed. 2d 94

(1979). The Pennsylvania Supreme Court in Silo cited United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), wherein the Supreme Court elaborated on the concept of common authority as follows:

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. Id, 39 L.Ed.2d at p. 250, footnote 7. In Matlock, the United States Supreme Court held that a paramour could voluntarily consent to a search of defendant's bedroom, not unlike the situation presented here.

Although we must determine the validity of a third party consent to entry of a residence as opposed to a consent to the search of such residence, we believe that the principles governing third party consent searches apply. Ms. Angelini was not a signatory of the lease at 745 Beaver Street, but she did cohabit with defendant there. When Hackman knocked on the door at 745 Beaver Street, it was Ruthetta Angelini whom he called. The evidence conclusively shows that Ms. Angelini did have equal access and control over the premises and thus had the authority to admit the police officers and firemen to the residence of defendant.

Defendant next contends that the evidence is insufficient to establish a consent to enter the premises. The burden is upon the Commonwealth

to show by a preponderance of the evidence that the alleged consent to enter defendant's residence was knowingly, intelligently and voluntarily given by defendant's live-in girlfriend. Commonwealth v. Silo, supra. Whether the consent was in fact voluntary and not the product of duress or coercion, express or implied, is a question of fact that must be determined from the totality of all of the circumstances. Commonwealth v. Morrison, 275 Pa. Super. 454, 418 A. 2d 1378 (1980).

We believe that the evidence of the totality of all the circumstances shows clearly that Ms. Angelini voluntarily consented to the entry into defendant's dwelling. There is no indication from the record that Ms. Angelini was actually or impliedly coerced in any way into consenting to the entry by the actions of police officers or by their presence on the porch.

The physical evidence that defendant seeks to have suppressed was observed in plain view by the officers who had a lawful right to be in the position where they were. Such evidence was therefore properly admitted at the trial. See Commonwealth v. Harris, 479 Pa. 131, 387 A. 2d 869 (1978). In addition, defendant's statements at the scene and at the police station were also admissible since they were not the fruit of an illegal search and seizure or arrest.

Accordingly, we enter the following

## ORDER

And now, May 21, 1982, the post-trial motions in arrest of judgment and for a new trial filed by defendant, Gerald Stanley Hanna, Sr., are dismissed. The Probation Department, Adult Division, is directed to prepare a pre-sentence report on defend-

ant to be completed as soon as possible. As soon as the pre-sentence report is completed, defendant is directed to appear for sentencing at the call of the district attorney.