371 A.2d 885

**COMMONWEALTH of Pennsylvania**

**v.**

**Edward MONTGOMERY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 16, 1975.

Decided March 31, 1977.

Hoffman and Spaeth, JJ., dissented.

John W. Packel, Chief, Appeals Div., Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, Philadelphia, for appellee.

374

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge:

This is an appeal from the judgment of sentence in the Court of Common Pleas of Philadelphia County, Criminal Division, by the defendant-appellant, Edward Montgomery, after conviction in a non-jury trial of robbery and of carrying a firearm in a public place. He was sentenced to a term in prison of not less than one year and not more than ten years.

On August 7, 1972, one Anthony Marano, an employee of John's Vending Company, was servicing the Red Lion Bar in Philadelphia. As Marano was leaving the premises the appellant opened the door for him and Marano left the premises and walked to his truck which was parked nearby. Before he entered his truck Mr. Marano saw the reflection of the appellant and another person in the glass door of the truck. As Mr. Marano entered the truck he felt a sharp object pressed against his side and was told to get inside the truck by the persons he had observed behind him. Appellant and his accomplice also entered the truck after which appellant asked Marano for "the money". At this point Marano observed the appellant pointing a gun at him. Appellant then held the gun on Marano while his accomplice removed money that Marano had collected from vending machines and left the truck. A few minutes later appellant also left the truck after which Marano jumped from the truck and managed to flag down a passing patrol car and informed the police of the incident. During the incident the appellant remained in Mr. Marano's view for a period of 5 minutes during which time Marano was able to get a good look at appellant at close range. Marano then entered the patrol car and rode around the block with the officer searching for the appellant and his accomplice. The patrol car then returned to the scene of the robbery and the officer

went inside the bar to notify headquarters of the incident. While the officer was inside the bar a person who Mr. Marano did not know informed him that the perpetrators of the crime were at a certain address which was located about a block from the scene. This information was given to Marano within 15 minutes of the robbery.

After informing the officer of what the unknown person told him, the officers and Marano proceeded to the address that had been supplied to them. When they arrived other police officers were already there. The officers knocked on the door and entered the premises. While some of the officers brought men downstairs from the second floor of the premises, Mr. Marano and other police went into the basement of the premises and found a substantial amount of change and a pink receipt slip with John's Vending Company printed thereon.

Mr. Marano was then taken to a police station where he identified the appellant and his accomplice. Mr. Marano also identified the appellant at trial as one of the men who robbed him. After the non-jury trial appellant was convicted of the charges and this direct appeal followed.

On appeal the appellant alleges that the entry and search of the premises was unlawful, that the out-of-court identification of him was illegal, that the in-court identification of him was so tainted by an unlawful out-of-court identification that it should not have been permitted and that his right to a speedy trial was violated mandating a dismissal of the charges against him.

Appellant argues that his arrest and the search of the premises were unlawful because they were not based upon probable cause. Generally, the Fourth Amendment to the United States Constitution requires that a search warrant be issued before any search of a premises can be lawfully conducted. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However there are certain circumstances which, when they

occur, justify a warrantless search of a suspect or his premises. E. g. see *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Warrantless searches or seizures are frequently justified when the court finds such exigent circumstances which excuse the police from obtaining a warrant. *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In the *Warden* case the court held that neither the entry of a premises without a warrant to search for a robber, nor the search for him without a warrant was invalid where the exigencies of the situation made that course imperative, as where the police were informed that an armed robbery had taken place, and that the suspect had entered the premises less than 5 minutes before they reached it. The court held that the police had acted reasonably when they entered the house under such circumstances and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The facts of the instant case are strikingly similar to the ones in *Warden,* supra. In our case the police had been informed that an armed robbery had just taken place. After a cursory search of the area at which the robbery had taken place they received information that the perpetrators of the crime were inside premises which was located about a block away from the scene of the crime. Their entry into the premises took place within 15 minutes of the robbery. Therefore we hold that the officer's entry onto the premises and arrest of appellant were sufficiently proximate in time and place to the scene of the crime so as to fulfill the doctrines of "exigent circumstances" and "hot pursuit" as recognized by the Supreme Court in the *Warden,* supra, case.

Appellant attempts to distinguish between our case and *Warden,* supra, in that in our case the information as to appellant's whereabouts was supplied by an unknown person not to the police officers themselves, but

to the victim who then transmitted that information to the police. In *Warden,* supra, two taxi cab drivers who had observed the suspect enter certain premises relayed that information to the police. Since probable cause may be based on information which would be inadmissible in a court of law such as hearsay information, *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), and since the Supreme Court of the United States upheld the search of the premises in the *Warden* case under circumstances similar to the ones at hand we fail to see any distinguishing factors between the instant case and *Warden,* supra.

In both instances the information as to the suspects' whereabouts was provided through intermediaries. We fail to see how the cab dispatcher in the *Warden* case was any more reliable than the victim in our case, nor how the cab drivers were any more reliable than the unknown person in our case. The salient factors in our case are that the robbery, the informer's tip, and the subsequent arrest of the appellant all occurred within 15 minutes time and within a block of each other. This places the occurrences so close to one another in time and place so as to justify the search as the probabilities were very great that a disinterested observer of the occurrences would have seen where the suspects went. Accordingly we find no unlawful police conduct relative to the search of the premises and subsequent arrest of appellant and his accomplice.

Appellant's argument that Marano's out-of-court identification of him at the police station was unlawful because he was denied counsel is not supported by the record. The police testified that appellant had been advised that he had a right to counsel at the lineup at the police station and that if he could not afford one that one would be supplied to him and that he had not requested one. This is a matter of credibility and was resolved by the court below in the Commonwealth's favor. However,

even if the pretrial lineup was improper the victim's in-court identification of the appellant was positive and was sufficient to convict the appellant. This is so because Mr. Marano had observed appellant and his accomplice for a period of about 5 minutes at very close range during the robbery and therefore an independent basis for the in-court identification existed.

A sufficient foundation from which a trial court can conclude that the origin of the in-court identification is independent of any improper out-of-court identification exists where there is ample opportunity afforded the witnesses to clearly observe the appellant at the scene of the crime, coupled with their unwavering certainty as to the correctness of their identification and their detailed description of the appellant. *Commonwealth v. Wortham*, 235 Pa.Super. 25, 342 A.2d 759 (1975). Because Mr. Marano observed the appellant and his accomplice at close range for an extended period of time and was positive of his identity we hold that the in-court identification of the appellant was valid.

Appellant contends that the delay of 858 days from the time of his arrest to his trial date was violative of his right to a speedy trial. Since his arrest occurred prior to the Pennsylvania Supreme Court's promulgation of *Rule 1100 of the Pennsylvania Rules of Criminal Procedure* we must look at other standards in determining the merits of this contention since rule 1100 applies only to cases where the suspect was arrested subsequent to June 30, 1973. *Rule 1100 Pa. Rules of Criminal Procedure 19 P.S. Appendix.*

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L. Ed.2d 101 (1972), the Court suggested that in deciding whether an accused's right to a speedy trial has been violated some of the factors to be assessed are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice of the delay to the defendant. In our case the delay of

858 days between the time of appellant's arrest and his trial would not be tolerated under our present Rule 1100 in the absence of mitigating facts. However, because appellant's arrest took place in August of 1972 which was prior to the effective date of Rule 1100 we must assess the other factors enumerated in the *Barker v. Wingo,* supra, test. Most of the delay in our case was occasioned by the lower court's delay in not deciding appellant's suppression motion. This matter was held under advisement by the court from December 20, 1972 to May 13, 1974. However the appellant himself requested and was granted two continuances and was therefore responsible himself for at least part of the delay (from June 17, 1974 to September 9, 1974). In any event there is no convincing evidence to indicate that the Commonwealth was responsible for the delay nor that the Commonwealth intentionally caused the delay in order to thwart the appellant's case in some manner. Insofar as the appellant's assertion of his right to a speedy trial is concerned there is nothing to indicate that appellant took any action to assert this right until August 19, 1974 which was two years after his initial arrest.

Appellant was then tried in December of 1974. Finally, and most importantly so far as we are concerned, the appellant did not show any prejudice to him caused by the delay. This is especially so because he was not incarcerated during this period. If anything, the delay could have worked in the appellant's favor by dimming the memory of Mr. Marano without whose testimony the Commonwealth could not have prevailed.

In any event appellant has failed to demonstrate prejudice to himself occasioned by the delay and therefore the instant case does not fall within the ambit of *Commonwealth v. Williams,* 457 Pa. 502, 327 A.2d 15 (1974), where the defendant was incarcerated during the delay and where two defense witnesses could not be located and another defense witness had died by the time

380

of trial. In applying the balancing test of *Barker v. Wingo*, supra, we hold that, although the delay between appellant's arrest and trial would not be tolerated under *Pennsylvania Rules of Criminal Procedure 1100* if the arrest had occurred subsequent to June 30, 1973, appellant's right to a speedy trial under the Sixth Amendment to the United States Constitution was not violated because he was not incarcerated during the delay, did not assert his right to a speedy trial until four months before the trial took place, demonstrated no prejudice due to the delay, and caused part of the delay himself.

Judgment of sentence affirmed.

HOFFMAN and SPAETH, JJ., dissent.