387 A.2d 869

**COMMONWEALTH of Pennsylvania**

v.

**Jerome HARRIS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 30, 1977.

Decided June 5, 1978.

132

Lester G. Nauhaus, John H. Corbett, Jr., Asst. Public Defender, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Robert A. Zunich, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-
EROY, NIX, MANDERINO and PACKEL, JJ.

OPINION OF THE COURT

NIX, Justice.

In the early hours of Sunday morning, July 6, 1975,
Thurman Everson was shot to death in his home. The
assailant also encountered Mr. Everson's wife and rendered
her unconscious by a blow to the head. On July 13, 1975,
appellant, Jerome Harris, was arrested in a one-room apart-
ment, wherein a revolver was seized which was later deter-
mined to be the murder weapon.[1] After a jury trial, Mr.
Harris was found guilty of murder of the third degree and
was ultimately sentenced to serve a term of imprisonment of
ten to twenty years. This direct appeal followed.[2]

The first assignment of error relates to Mrs. Eula Ever-
son's photographic identification of appellant as the assail-
ant. It is argued that the procedure used in presenting the
photographic array was impermissibly suggestive, *see Neil v.
Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972),
and that the introduction at trial of this out-of-court identi-
fication requires the award of a new trial. Specifically, it is
argued that the photographic array consisted of 25 pictures
of which 12 were duplications. The doubles, two pictures of
the same individual, presented a front and side view. There
was only a single picture of Mr. Harris in the group of
photographs displayed. It is this distinction which appellant

1. At the time of his arrest, Mr. Harris was an escapee from Grater-
ford Prison.

2. An appeal was lodged in the Superior Court from the convictions
resulting from the assault upon Mrs. Eula Everson. Appellate Court
Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. III, § 302, 17
P.S. § 211.302 (Supp.1977–78). There was no attempt to certify the
appeal in the assault charges to this Court, and we have been advised
that at the time the briefs were filed in the instant matter, the appeal
in the Superior Court was still pending. The basis of our jurisdiction
on the murder conviction is Act of July 31, 1970, P.L. 673, No. 223,
art. II, § 202, 17 P.S. § 211.202(1) (Supp.1977–78).

seizes upon to support his charge that the procedure was impermissibly suggestive.[3]

■ This issue has not been properly preserved for review here. Rule 323(b) of the Pennsylvania Rules of Criminal Procedure provides:

(b) Unless the opportunity did not previously exist, or the interests of justice otherwise require, such application shall be made only after a case has been returned to court and not later than ten days before the beginning of the trial session in which the case is listed for trial, except that in any judicial district having continuous trial sessions said application shall be filed not later than ten days before the day the case is listed for trial. If timely application is not made hereunder, the issue of the admissibility of such evidence shall be deemed to be waived.

Although appellant did file a pre-trial suppression motion in this case pursuant to Rule 323, that motion did not relate to the out-of-court photographic identification. Furthermore, this evidence was not objected to at the time it was introduced at trial. The failure to present this constitutional issue in a timely pre-trial application requires us now to conclude that the question has been waived. *Commonwealth v. Goggans*, 455 Pa. 606, 317 A.2d 222 (1974); *Commonwealth v. Williams*, 454 Pa. 261, 311 A.2d 920 (1973).

■ Appellant's second complaint is addressed to the trial court's refusal of certain requested points of charge relating to the definition of reasonable doubt. Appellant concedes that the charge as given was in accordance with our law but urges it was incomplete and should have been implemented as suggested by the requested points. We do not agree. A review of the charge in its entirety, *Commonwealth v. Heatherington*, 477 Pa. 562, 385 A.2d 338, 340, (1978); *Commonwealth v. Newsome*, 462 Pa. 106, 110, 337 A.2d 904, 906

---

**3.** The trial court disposed of this contention by noting, "The photographs of the individuals were not in any numerical sequence but were staggered." It was also significant that there was no distinction about the photograph depicting appellant which would distinguish it from the remaining photographs in the group.

(1975); *Commonwealth v. Stoltzfus,* 462 Pa. 43, 62, 337 A.2d 873, 882 (1975); *Commonwealth v. Walker,* 459 Pa. 12, 15, 326 A.2d 311, 313 (1974), satisfies us that the concepts of reasonable doubt and of the Commonwealth's burden of proof were not only accurately given, but also that these instructions were adequate and clear. We have frequently stated that a trial court is not required to accept the language of counsel, but is free to fashion its own form of expression, so long as the issue is adequately, accurately and clearly presented to the jury. *E. g., Commonwealth v. McComb,* 462 Pa. 504, 341 A.2d 496 (1975).

■ Appellant also alleges that the Commonwealth's evidence failed to establish his guilt beyond a reasonable doubt. This argument is principally directed to the identification of appellant by Mrs. Everson. It is argued that since Mrs. Everson was unable to make an in-court identification of Harris, the photographic identification standing alone was too unreliable to prove that he was the perpetrator of this act. The first weakness of this contention is that it assumes the identification testimony of Mrs. Everson was the only evidence connecting the appellant with the crime. The assumption is fallacious.

Initially, appellant ignores the fact that the gun seized in his possession at the time of his arrest was established by expert testimony as being the murder weapon. The testimony also revealed that after July 6, 1975, Mr. Harris was in possession of and attempted to sell certain United States bonds that had formerly been in the deceased's possession.[4] Harris' only explanation for his possession of these bonds was that he won them in a dice game. Moreover, there was testimony which indicated that shortly before July 6, 1975, Harris had made inquiry as to the location of the victim's residence and that he and Everson were acquaintances. These facts are particularly significant in view of Mrs. Everson's testimony that her husband, after responding to a

4. The evidence introduced at trial showed that Mr. Everson was in the business of purchasing these bonds from people for $15.00 and then cashing them for $18.75 after the 30-day waiting period expired.

knock at the door, admitted the caller whom he apparently knew. It is therefore obvious that aside from direct identification testimony there was circumstantial evidence sufficient in law to permit a jury to find appellant the perpetrator of this crime. *Commonwealth v. Williams*, 476 Pa. 557, 383 A.2d 503, 505 note 2 (1978); *Commonwealth v. Courts*, 468 Pa. 613, 616, 364 A.2d 684, 686 (1976); *Commonwealth v. Cox*, 466 Pa. 582, 586, 353 A.2d 844, 846 (1976).

■ Turning to appellant's specific attack on the identification testimony, it is clear that appellant would have us judge the sufficiency of the evidence based on a diminished record. This we have consistently refused to do. *E. g., Commonwealth v. Baker*, 466 Pa. 479, 353 A.2d 454 (1976). It is without question that the out-of-court identification combined with the circumstantial evidence would be more than sufficient to permit the jury's finding that Mr. Harris was in fact the individual who entered the home of the victim and his wife and committed the complained of acts. We have previously considered and accepted the admissibility of the out-of-court photographic identification. Even if we were to assume arguendo that its reliability was in question, the corroboration provided by the circumstantial evidence would be sufficient to justify its acceptance by a finder of fact.

■ The final flaw in appellant's argument is that the out-of-court photographic identification testimony was not so intrinsically unreliable or contradictory as to render it incapable of supporting a finding of guilt. *Cf. Commonwealth v. Bennett*, 224 Pa.Super. 238, 303 A.2d 220 (1973). In *Commonwealth v. Farquharson*, 467 Pa. 50, 60–61, 354 A.2d 545, 550 (1976) we stated:

"The *Bennett* principle is applicable only where the party having the burden of proof presents testimony to support that burden which is either so unreliable or contradictory as to make any verdict based thereon obviously the result of conjecture and not reason."

Here there is no legitimate basis for finding as a matter of law that Mrs. Everson's identification of Harris' photograph was "the result of conjecture and not reason." Mrs. Everson testified, relating to the incident, that while she was in the bathroom preparing to retire, her husband, the victim responded to a knock at their door. The victim admitted the person and thereafter Mrs. Everson heard a sound which she compared to the explosion of a "firecracker". Thereupon a man came into her bedroom to assure her that her husband was alright. As she left the room to see her husband, she was struck over the head and rendered unconscious.

The police showed Mrs. Everson two sets of photographs. In the first set she did not identify any one depicted therein as being the man who entered the home on that fatal occasion.[5] In the second array, which we have referred to earlier, she picked appellant's photograph from the 25 shown to her. Mrs. Everson stated that she had an unobstructed view of the man who entered her bedroom and was certain that he was the man depicted in the picture she identified. She explained her failure to make an in-court identification because of changes in the hairstyle and moustache of appellant. Under all of the circumstances we cannot find that the identification was so unreliable that as a matter of law it should not have been accepted by the finder of fact.

Appellant's fourth claim involves the seizure of the murder weapon at the time the police arrested appellant. He does not challenge the legality of the arrest, but rather argues that the gun was not on his person, was not in plain view, and was not seized pursuant to a search warrant. After arresting appellant but before leaving the apartment, one of the officers present in the room observed a revolver lying on an open shelf. Another officer present seized the gun after being told by the owner of the apartment that appellant "threw it up there." At the suppression hearing the officers testified for the Commonwealth that the gun was in plain view on the shelf. The defense introduced testimony disputing that the gun was in plain view. In

5. Appellant's picture was not included in this group.

reviewing a suppression court's findings "this Court will consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Kichline*, 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976). Excluding from consideration the defense witnesses' testimony as clearly contradicted and taking into consideration the testimony of the Commonwealth witnesses, it becomes apparent that the lower court's finding of "plain view" was proper.

Where police have a lawful right to be in the position of observation, they can lawfully seize objects in plain view. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973). Since appellant does not challenge the officers' right to be in the apartment to make the arrest, then the gun, having been in plain view there, was properly seized and admitted at trial.

Judgment of sentence affirmed.

MANDERINO and LARSEN, JJ., concur in the result.