**Tonora ARCHIBALD, et al., Plaintiffs, Appellants,**

v.

**Charles MOSEL, et al., Defendants, Appellees.**

**No. 81–1555.**

United States Court of Appeals, First Circuit.

Heard Jan. 8, 1982.

Decided April 28, 1982.

Winston Kendall, Roxbury, Mass., with whom Charles Ray Johnson, Roxbury, Mass., was on brief, for plaintiffs, appellants.

Arlene LaPenta, Asst. Corp. Counsel, Boston, Mass., with whom Bohdan S. Ozaruk was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

The appellants, Tonora Archibald and her mother Gertrude Archibald, brought this civil rights action under 42 U.S.C. § 1983, and pendant claims under state law, against two Boston policemen, the police commissioner and the City of Boston. They claimed damages arising out of a "warrantless search" of their home. The district court directed verdicts in favor of the commissioner and the City, and submitted the case against the policemen to a jury which found in favor of the policemen. Appellants attack the judgments against them on various grounds and seek a new trial. As they conceded at oral argument, however, they cannot succeed on this appeal if the warrantless entry into their home was in fact justified under the Fourth Amendment. We believe that undisputed facts in the record of this case show that it was.

The following facts were uncontroverted at trial: On February 25, 1980, Mr. Kamya Tivay called Boston police headquarters reporting that he had been robbed. Two policemen, defendants in this case, immediately responded and contacted Tivay, who told them that about ten to fifteen minutes earlier a man, whom he described in considerable detail, had robbed him of $105 and his coat. Tivay added that he had just chased the robber into apartment 2005 at 300 Ruggles Street, a half-block away. They all went to the apartment. The police officers pointed to the door of apartment 2005, and, after Tivay said he was certain the robber had entered it, the policemen knocked. There was no response, but the officers heard noises that sounded like furniture being moved inside. After announcing their presence and hearing only these noises in response, one of the officers broke in through a window. When they entered, guns drawn, they found no robber, but only a small child, who was seriously frightened by the knocking and the entrance. The issue before us is whether on these facts a warrantless entry was justified.

Appellants recognize that a warrantless entry and search of an apartment can escape the Fourth Amendment's prohibition of "unreasonable" searches because an emergency, reasonably so identified, makes such an entry "reasonable." They agree that such an entry is reasonable if justified by "exigent circumstances" of the sort described in *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (police entered a house to search for an armed robbery suspect who had been seen entering that house only five minutes before), or if the police were in "hot pursuit" of a suspect, as in *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (the suspect, in view of the police, retreated through a doorway into her own home). They argue, however, that *Hayden* is limited to cases involving guns, physical danger, and five minutes of elapsed time, and that *Santana* requires "some sort of chase" involving (in appellants' words) the "sighting" of the suspect by the police officers.

* Of the Second Circuit, sitting by designation.

We do not believe that *Hayden* or *Santana* are as limited in their scope as appellants suggest. Certainly other courts have read them as permitting warrantless searches in situations similar to this one. Thus, in *United States v. Mitchell*, 457 F.2d 513 (6th Cir.), *cert. denied*, 409 U.S. 866, 93 S.Ct. 161, 34 L.Ed.2d 114 (1972), a warrantless entry and arrest was upheld although the police relied upon witnesses, not their own observations, in tracing a bank robbery suspect to his home where he was arrested two hours after the robbery. In *United States v. Scott*, 520 F.2d 697 (9th Cir. 1975), *cert. denied*, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976), a still more attenuated chain of identifying testimony led the police to an apartment house, where they invaded an apartment on the strength of scuffling noises and arrested suspects an hour and forty-five minutes after a bank robbery. *See also People v. Escudero*, 23 Cal.3d 800, 153 Cal.Rptr. 825, 592 P.2d 312 (1979) (suspect need not be kept physically in view at all times); *Commonwealth v. Montgomery*, 246 Pa.Super. 371, 371 A.2d 885 (1977) (*Hayden* governs even though bystander told the victim, not the police, where robbers were); *State v. Gallo*, 20 Wash.App. 717, 582 P.2d 558 (1978) (victim told police that assailant had gone to house next door); 2 W. LaFave, *Search & Seizure* § 6.1 & n.66 (1978). Moreover, nothing in the language of *Santana* or *Hayden* suggests that all other cases involving chases, "hot pursuit" or "exigent circumstances" must involve "sightings" or exactly similar facts to justify warrantless entry or search. Rather those cases exemplify the types of fact that offer justification. And, such facts are present here.

The crime described to the police officers was a serious crime that is by definition accompanied by violence.[1] The witness seemed trustworthy, for he was able to give a detailed description of the assailant, and to explain coherently what had occurred. He described his own "pursuit" up to the point the officers took over. And, he stated unequivocally that the thief had entered appellants' apartment, apartment 2005, and led the police unerringly to that apartment. The police officers arrived at the apartment no more than twenty to twenty-five minutes after the theft. Their suspicions were corroborated by the noise inside the apartment, which showed that someone was there, and by the refusal of the occupant to respond to their announcements. They thus could reasonably have believed at that point that a robbery suspect was in the apartment and that further delay could lead to the suspect's escaping, hiding evidence, or injuring any other apartment occupant. These facts support, in our view, a reasonable perception of exigent circumstances. The mere fact that the police were *in fact* wrong and that only a child was inside the apartment does not weaken the reasonableness of the perception. Indeed, any contrary ruling would undesirably prevent the police from entering an apartment in other cases similar to this one *but for the fact that the suspect is in the apartment holding the child prisoner.* The only case that even arguably supports appellants is *Wallace v. King*, 626 F.2d 1157 (4th Cir. 1980), *cert. denied*, 451 U.S. 969, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981), in which the court held that mere grounds to believe that a suspect was present in a house does not justify dispensing with a warrant. But *King* involved a domestic relations matter and testimony that there was adequate time to secure a warrant—two facts that make the need for warrantless entry signif-

---

1. Appellants make much of the fact that Mr. Tivay did not explicitly state either that the man who relieved him of his property was armed or that he had used violence. Thus, the appellants claim that the alleged crime was no more than a larceny, *compare* Mass.Gen.Laws Ann.ch. 265, § 17, 19 (West 1970) *with* Mass. Gen.Laws Ann.ch. 266, § 30 (West 1970 and Supp.1981), and that the police officers were not entitled to enter an apartment without a warrant in the absence of a crime of violence. Even if the exigency involved in a particular crime diminishes as does the significance of the crime, we note that neither was the crime here reported insignificant, nor is violence a prerequisite to a finding of exigent circumstances. *See, e.g., United States v. Santana, supra* (suspect had just completed a narcotics transaction).

**8**

icantly less compelling there than in the case before us.

Because the undisputed facts show the search at issue was constitutional, the district court properly denied appellants' motion for a new trial. Moreover, we need not pass upon appellants' other assignments of error, which involve admissibility of evidence which was intended to show bad faith on the part of defendants or evidence of damages, for, even if they were well-founded, they would involve errors that were either harmless or irrelevant in the face of the basic validity of the entry and the search. Appellants' case against the police commissioner and the City of Boston, based upon a charge of inadequate supervision of the police officers, depends, at a minimum, upon a possible finding that there was an unreasonable search. Hence, the directed verdicts in those cases were proper.[2]

*The judgments are affirmed.*

---

**2.** The court dismissed the complaints against the City and commissioner on the grounds that there had been no showing that the police officers' actions were the custom or policy of the City or that any alleged failure to supervise amounted to more than mere negligence. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Because we hold that the

entrance was constitutional, we need not consider whether, if unconstitutional, it might lead to a finding of liability against the City and commissioner.