458 A.2d 594

**COMMONWEALTH of Pennsylvania**

**v.**

**Vernon FOY, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 4, 1982.

Filed March 25, 1983.

Petition for Allowance of Appeal Denied Sept. 14, 1983.

Mark E. Kogan, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, ROWLEY and VAN der VOORT, JJ.

VAN der VOORT, Judge:

On Monday, September 3, 1979, Bill Cook's Pub at 5701 Elmwood Avenue, Philadelphia, was burglarized and Bill Cook, the proprietor, severely beaten by the burglar. In a non-jury trial on May 5, 1981, Appellant was found guilty of recklessly endangering another person, possession of an instrument of crime, aggravated assault, criminal trespass, and burglary. After denial of post-trial motions, Appellant was sentenced to a total of ten to twenty years imprisonment. The case is before us on direct appeal.

Appellant was apprehended by a police officer two blocks from the scene of the crime, within a few minutes after the assault on Mr. Cook. The officer brought Appellant back to the Pub where he was identified by the victim of the beating as his assailant.

The sole issue on appeal is whether the victim's identification of Appellant as his assailant, a statement he later made

to a detective denying guilt, and a flashlight which he removed from his pocket at the police station, should have been suppressed on the ground that they were the fruits of an arrest, illegal because made without a warrant or probable cause.

The circumstances leading up to Appellant's arrest are these: At 5:30 a.m. of the day of the break-in, a silent burglar alarm went off at Cook's Pub, connected to a police station and the apartment of William Cook, the Pub owner and victim. In response to the alarm, Mr. Cook and the police arrived at the Pub simultaneously, checked the first floor and basement and discovered evidence of the break-in and the burglary but no clue as to the whereabouts of the burglar.

In mid-morning of the same day, Cook decided to visit the basement again, to check the possibility of the burglar's entry having been made through a wall from an adjoining empty building. While in the basement, he unexpectedly came upon a man standing in a shower stall in the basement bathroom. The fluorescent lights above the shower were lit, the shower curtain was open, and the intruder was facing Cook and standing motionless in the shower stall. Cook, 69 years old, was frozen with fright, and after staring at the Appellant several moments, attempted to retreat to the stairway to the first floor. He had taken only a step or two when the intruder assaulted him with what appeared to be a tire iron, striking him some 15 to 18 times. Cook put up his arms to break the blows to his head, but was knocked to the floor and badly beaten. He screamed for help, and Appellant ran up the steps to the first floor and out of the building. Someone in the bar of the Pub put in a call to the police and Officer Daniel Pinkney, cruising in a nearby radio patrol car, was dispatched to the scene of the disturbance at approximately 10:57 a.m. This was within a few minutes of the attack on Cook.

When Officer Pinkney was two blocks from the Pub, he was flagged down by the hand-waving and horn-blowing of a motorist driving away from the Pub and in the opposite

direction to the approaching police car. The motorist told the officer that a man walking away from the Pub and some ten or fifteen feet ahead of the informant's car was the man who had caused the disturbance at the Pub. There was no one else in sight on the street. The man thus identified was Appellant.

The officer backed his car toward the departing Appellant, who immediately quickened his pace and then broke into a run. The officer yelled to Appellant to halt, and pulled his revolver. Appellant halted and the officer frisked and handcuffed him. When the officer asked the informant if he could identify Appellant as the one who had robbed Cook's Pub, he said he could not.

The officer then decided to have Appellant taken to the Pub for further identification. He put Appellant in the back seat of his patrol car and radioed the police station for a police wagon to take Appellant back to the Pub. While awaiting the police wagon, the officer turned on his car radio and heard a police bulletin concerning the burglary of Cook's Pub. The bulletin called for the apprehension of a negro male about five feet nine and one-half inches tall and dressed in black trousers and white shirt (as was Appellant).

As soon as the police wagon arrived, Appellant was returned to the Pub, handcuffed and in custody of Officer Pinkney. When he was taken into the Pub, Mr. Cook was sitting in a chair at the top of the stairs leading to the basement, bleeding and being administered to by a police rescue squad, in pain but alert and talking. He immediately identified Appellant as his assailant. Appellant was then arrested and, in due course, tried and convicted.

Appellant's appeal is based on the contention that this on-the-scene identification of him, and the statement which he later made to a detective denying guilt, and the flashlight found in his pocket, should have been suppressed as evidence because they were the products of an illegal arrest. A suppression hearing was held by the Court below and suppression was denied.

Appellant relies upon the guidelines to be gleaned from the opinions in *Aguilar v. Texas* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for determining the reliance that may be placed by an arresting officer on information received from an informer. Those guidelines, as paraphrased by this Court in *Commonwealth v. Waters,* 276 Pa.Super.Ct. 584, 589, 419 A.2d 612 (1980), require that:

> Where probable cause is based upon information received from an unidentified informant, the following requirements must be met: (1) the arresting officer must know some of the underlying circumstances from which the informant concluded that the suspect participated in criminal activity, and (2) the officer must have some reasonable basis for concluding that the informant was credible or his information reliable.

In several recent cases, we have held that in applying the requirements of *Aguilar* and *Spinelli* to information furnished by an informant, we should test reasonable cause for arrest not merely on the tip received from the informant, but by surrounding circumstances as well, including background information otherwise known or reasonably believed by the arresting officer, the timing of the informant's information, the proximity of the informant to the scene of the disturbance, and the conduct of the suspect in fleeing from the scene or from the police. So tested, we have refused to rule an arrest to be illegal or to suppress testimony where the circumstances tending to corroborate the informant were, if anything, less persuasive than in this case. *Commonwealth v. Gease,* 304 Pa.Super.Ct. 433, 450 A.2d 989 (1982), *Commonwealth v. Legg,* 258 Pa.Super.Ct. 294, 392 A.2d 801 (1978), *Commonwealth v. Montgomery,* 246 Pa.Super.Ct. 371, 371 A.2d 885 (1977).

In *Legg,* this Court held that the reliability of an anonymous tip could be established by other circumstances, and that pieces of information which are insufficient in themselves to establish probable cause may be cumulated to

establish a reasonable basis for arrest. Those circumstances included the fact that the suspect fled from the police, that he fit the description of the robber previously obtained by the police from eyewitnesses, and that the location of the place where he was hiding and its distance from the scene of the crime was consistent with the time that had elapsed between the robbery and his apprehension. As this Court concluded in *Legg*, 258 Pa. Superior Ct. at 299, 392 A.2d 801:

> Were we to conclude that [the officer] lacked probable cause to arrest on these facts, especially given Appellant's flight from answering any questions, we would, in effect, be requiring that [he] simply "shrug his shoulders and allow ... a criminal to escape", since no intermediate approach was feasible.

*Montgomery* also involved an arrest based upon an anonymous tip corroborated by surrounding circumstances. An unknown informant told the victim that the perpetrators of the crime were at a certain address about a block from the scene of the crime. This information was given to him within 15 minutes of the robbery, and he at once advised the police, who went to the address and made the arrest. We stated, 246 Pa.Super.Ct. at p. 377, 371 A.2d 885:

> The salient factors in our case are that the robbery, the informer's tip, and the subsequent arrest of the Appellant all occurred within 15 minutes time and within a block of each other. This places the occurrences so close to one another in time and place so as to justify the search as the probabilities were very great that a disinterested observer of the occurrences would have seen where the suspects went. Accordingly we find no unlawful police conduct relative to the search of the premises and subsequent arrest of Appellant and his accomplice.

In the case before us, probable cause for arrest does not rest solely on the information received from the informant, but rather on several circumstances known to the officer which collectively tended to confirm what he had been told by the informant. The officer knew that there had been a disturbance at Cook's Pub because he was on his way to the

Pub in response to a police direction to go to the scene of the trouble at the Pub. The credibility of the informant's statement that Appellant was the culprit was strengthened by the fact that the informant was following Appellant very closely by car only two blocks from the Pub and only a few minutes after the officer had been called to the scene (10:57 a.m.). Appellant had quickened his departing steps when he saw the informant flag down the police car, and he broke into a run when the officer started toward him. This is relevant evidence of a guilty frame of mind. The final circumstance was the police broadcast while the officer was holding Appellant pending the arrival of the police wagon. In that police broadcast, Appellant and his apparel were accurately described.

It is abundantly clear that the circumstances known to Officer Pinkney prior to his action in returning Appellant to the Pub for identification were so cumulatively convincing as to amount to a reasonable basis for apprehending Appellant. Every circumstance, the timing of Appellant's apprehension within minutes of the disturbance, the near location of his apprehension in relation to the Pub, the conduct of Appellant in attempting to flee, and the radioed police bulletin describing Appellant with accuracy, justified the officer's action in first apprehending and then arresting Appellant after his identification by Cook.

Even so, if we had doubts about the legality of Appellant's arrest, which we do not, we would find it difficult to classify any of the evidence on which he was convicted as the fruit of his arrest. Cook's identification of Appellant at the trial as his assailant was based upon his vivid recollection of him when he first came upon him unexpectedly in the basement shower. The red flashlight, which was taken from his pocket at the police station, was offered in evidence but was not otherwise mentioned in the testimony. His statement taken by the detective at the police station immediately following his arrest, which was a denial of

guilt and an explanation of his presence on the street when apprehended, was not introduced in evidence.

Judgment of sentence affirmed.

SPAETH, J., concurs in the result.