470 A.2d 601

**COMMONWEALTH of Pennsylvania**

v.

**Bernard JERRY, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 30, 1983.

Filed Dec. 23, 1983.

Petition for Allowance of Appeal Denied April 13, 1984.

300

Michael James Healey, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WICKERSHAM, ROWLEY and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from an order of the Court of Common Pleas of Allegheny County denying Post Conviction Hearing Act (PCHA)[1] relief to appellant, Bernard Jerry.

On March 16, 1977, appellant was convicted by a judge, sitting without a jury, of possession of a controlled substance[2] and theft by receiving stolen property.[3] Appellant was sentenced to a term of imprisonment of not less than nine months nor more than eighteen months. No post-verdict motion was filed, and no direct appeal was taken. We must remand for proceedings not inconsistent with this opinion.

On September 2, 1977, appellant filed his first PCHA petition *pro se.* A hearing was held on June 1, 1978, and the court denied appellant's petition.

On November 29, 1978, appellant filed his second PCHA petition *pro se.* The court denied appellant's petition without a hearing. Appellant's third *pro se* PCHA petition was filed in May of 1981. This petition also was dismissed because "all issues raised therein have been previously disposed of by this Court." Order of Court dated June 23, 1981, at No. 4. There is no transcript of this evidentiary hearing; however, counsel for the appellant and the prosecution entered into a "STIPULATION OF FACTS" which

1. 42 Pa.C.S.A. § 9541 *et seq.*

2. 35 Pa.C.S.A. § 780–113(16).

3. 18 Pa.C.S.A. § 3925.

stated that an evidentiary hearing was conducted on September 15, 1981. Appellant was permitted to amend his PCHA petition to include an allegation of the ineffective assistance of appellate counsel. The court concluded that appellant did not waive his right to appeal and entered an order allowing appellant the right to appeal *nunc pro tunc* from the order of court dated June 1, 1978. The court also appointed private counsel to represent appellant on appeal.

Appellant raises three issues: (1) whether the trial court erred in denying appellant's application to suppress illegally seized evidence because warrants were required; (2) whether the trial court erred in admitting into evidence a statement made by appellant as a result of police interrogation; and (3) whether the trial court erred in ruling that there was sufficient evidence to support appellant's conviction for theft by receiving stolen property.

■ The prosecution contends that the issues that appellant raises either have been finally litigated or waived because "appellant's failure to file post trial motions precludes consideration of those allegations of error raised in his first PCHA petition concerning the admission of certain evidence." Brief for the Prosecution at 7. We cannot agree with the prosecution's contention.

To begin with, the PCHA court determined that appellant's appellate rights were violated. Even the prosecution conceded as much in its "STIPULATION OF FACT" when it stated:

"Any waiver which resulted from the failure to file a timely Notice of Appeal was through no fault of the petitioner and, therefore, cannot be deemed to be knowing and voluntary. Petitioner at all times desired to pursue an appeal from the denial of post conviction relief and in fact believed that such an appeal had been perfected on his behalf." Record at No. 8, page 2.

Although the prosecution in its stipulation admitted that appellant's appellate rights were violated at the *PCHA* stage, this Court concludes that appellant's failure to file

post-trial motions does not constitute a waiver because our examination of the record reveals that appellant was not advised properly of his post-trial rights. The Court stated the following:

"THE COURT: I am going to order a pre-sentence report and direct that the Defendant be returned pursuant to the detainer to Beaver County Jail.

You know you have seven days to file post-trial motions on this matter, Mr. Stockey?

MR. STOCKEY: I guess I have to.

THE COURT: I don't know whether you have to or not. You have to say on the record that you understand you have seven days.

MR. STOCKEY: Right." (Notes of Testimony, N.T., 3/17/77, at 77–78)

At the time of appellant's trial, March 17, 1977, appellant should have been informed of his "rights with respect to the filing of post-trial motions [e.g., the right to the assistance of counsel in the filing of the motion and on appeal of any issues raised therein], the time for filing and the waiver consequences of not filing as required by Rule 1123". *Commonwealth v. Vasquez,* 268 Pa.Super. 295, 298 n. 4, 408 A.2d 154, 156 n. 4 (1979)[4].

Although appellant was advised of the time limit for filing post-trial motions, he was not advised of his right with respect to the filing of post-trial motions nor was he advised of the waiver consequences of not filing a motion in accordance with Pa.R.Crim.P. 1123. Thus, on this record we are unable to agree with the prosecution that "appellant's failure to file post trial motions precludes consideration of those allegations of error raised in his first PCHA

---

4. In a similar case, we said:
   "At the time of appellant's trial [June, 1977], a seven (7) day period was in effect under then Rule 1123. The ten (10) day period did not become effective until July 1, 1977. However, the amending of the rule has no bearing on the issues raised by this appeal." *Id.,* 268 Pa.Superior Ct. at 298 n. 3, 408 A.2d at 155 n. 3.

petition concerning the admission of certain evidence." Brief for the Prosecution, *supra* at 7.

It is well-established that:

" '[When] the trial court [does] not comply with Rule 1123(c), petitioner's failure to file adequate post-verdict motions cannot be deemed a knowing and intelligent waiver of his right to appeal.' *Commonwealth v. Cathey*, 477 Pa. 446, 450, 384 A.2d 589, 591 (1978)." *Commonwealth v. Rowe*, 268 Pa.Super. 380, 383, 408 A.2d 516, 517 (1979).[5]

In any event, the issue of whether appellant was deprived of his appellate rights either at the post-trial stage or at the PCHA stage is intertwined in the instant case because the PCHA court concluded that appellant's appellate rights were violated at the PCHA stage, and our examination of the record also establishes that appellant's appellate rights were violated at an additional stage, the post-trial stage.[6] This is significant because we must analyze the issues appellant has raised in connection with the PCHA Hearing Act which provides in relevant part:

5. The notes of testimony from the sentencing proceeding have not been forwarded to this Court with the rest of the transcript. However, even if we assume that appellant was advised properly of his appellate rights at sentencing, any appeal he would have launched would have been futile because a defendant "waives for purposes of appeal any issues which could have been included in the post-trial motions." *Commonwealth v. Olsen*, 247 Pa.Super. 513, 519, 372 A.2d 1207, 1210 (1977).

6. In *Commonwealth v. Miranda*, 296 Pa.Super. 441, 448 n. 6, 442 A.2d 1133, 1136 n. 6 (1982), this Court commented on this problem:
  Thus, it is evident that denial of appellate rights may result for varied reasons, including, *inter alia,* the ineffectiveness of appellate counsel, as was the case in *Commonwealth v. Webster,* 466 Pa. 314, 353 A.2d 372, 373 (1976), or a procedural error committed by the lower court, such as the failure of the court to inform defendant of his appeal rights. Because most of the cases developing the law in the area of *nunc pro tunc* appeals arise within the context of ineffective appellate counsel claims, our opinion appears to deal with this subject almost exclusively; however, the impact and scope of this opinion is intended to be broader and more general, explaining the proper procedure to be utilized by a PCHA court faced with a claim asserting denial of appellate rights, for whatever reason, together with other claims properly raised.

Section 9544 of the Post Conviction Hearing Act provides for the following:

**(a) Issues finally litigated.**—For the purpose of this subchapter, an issue is finally litigated if:

(1) It has been raised in the trial court, the trial court has ruled on the merits of the issue and the petitioner has knowingly and understandingly failed to appeal the trial court's ruling.

(2) The Superior Court has ruled on the merits of the issue and the petitioner has knowingly and understandingly failed to avail himself of further appeals.

(3) The Supreme Court has ruled on the merits of the issue.

**(b) Issues waived.**—For the purposes of this subchapter, an issue is waived if:

(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted or in a prior proceeding actually initiated under·this subchapter.

(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.

**(c) Presumption.**—There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

The presumption in the instant case has been rebutted because appellant was deprived of his appellate rights at the post-trial stage. *See Commonwealth v. Miranda, supra.*

In this *nunc pro tunc* appeal, we are presented with an additional procedural twist. That is, appellant raised at the PCHA level and before this Court other issues. In his brief, filed before this Court, appellant contended that (1) the suppression court erred in denying his application to suppress because the police officer conducted an illegal, warrantless search and seizure and an illegal warrantless ar-

rest; (2) the trial court erred in admitting into evidence a statement obtained as the result of police interrogation; and (3) the evidence was insufficient to sustain a conviction of receiving stolen property.

Because the other issues which appellant raises can be addressed on the present record, there is no need to remand on these issues. *See Commonwealth v. Miranda, Id.,* 296 Pa.Superior Ct. at 456, 442 A.2d at 1141 ("Moreover, we have a complete record and can address each of the specific allegations raised by appellant.")

▇ In reviewing the determination made by the suppression court, we must remember the following guidelines:

"In the case of *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980), our Supreme Court stated the following:

'When ruling on suppression motions, the suppression court is required to make findings of fact and conclusions of law as to whether evidence was obtained in violation of the defendant's constitutional rights, Pa.R.Crim.P. 323(i),* and must determine whether the Commonwealth has established by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 323(h).** On review, this Court must "determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." (citations omitted)'

* Pa.R.Crim.P. 323(i) provides the following:

At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.

** Pa.R.Crim.P. 323(h) provides the following:.

The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights. The defendant may testify at such hearing, and, if he does so, does not thereby waive his right to remain silent during trial."

308

Additionally, in making this determination, we must consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Kichline*, 468 Pa. 265, 280–1, 361 A.2d 282, 290 (1976).

■ The prosecution's evidence at the suppression hearing established that the police received a telephone call at approximately 3:59 P.M. on October 29, 1976, stating that appellant at 58 Roberts Street was seen with a machine gun. (Notes of Suppression Testimony, N.S. 4) The police also knew from information received seventeen or eighteen months previously that a "man was renting guns out to suspected hold-up people." (N.S. 5) The police also stated that at that time appellant was not there. *Id.* The police officer proceeded to 58 Roberts Street with other officers and surrounded the house. (N.S. 6) The police officer approached the front door, knocked on the door and was admitted by an unknown adult. (N.S. 6–7) The officer, who was not in uniform at the time, asked the individual where Bernard, the appellant, was, and the individual "made a motion with her hand, pointing up." (N.S. 7) The police officer then climbed the stairs until he went to the second floor. *Id.* Because the police officer had recovered a gun previously on the third floor, he opened the door to the third floor. *Id.* He heard footsteps and saw appellant either exiting or coming in the doorway. (N.S. 8) By this time, the other officers had arrived. The police then found a .38 pistol on the dresser at the top of the steps. *Id.* Upon being asked whose guns they were, no one answered. *Id.* Then appellant answered that the other guns were in the corner when the police questioned, "Where are your other guns?". (N.S. 8) A rifle was located in the corner, which had a clip of eight live rounds. (N.S. 17) At that time, appellant was placed under arrest. The police also seized a white envelope in plain view which tested to be cocaine and lidocaine. (N.S. 18)

After the police officers testified on behalf of the prosecution, the appellant presented no additional testimony. The suppression court then stated the following:

"THE COURT: [The police] knew a lot more than that. They had had prior contact with the Jerry family. They had prior contact with guns being at 58 Roberts Street. They knew that Bernard Jerry was a former convict and, as such, would not be permitted to be carrying guns.

I think it is totally different, I really do, between a machine gun and narcotics. I totally agree with you as far as the underlying circumstances, but what are the police supposed to do. Here they received information that one of our citizens is carrying a machine gun. Are they supposed to at this point in time say, well, gentlemen, there is nothing we could do about that, you know, and let the community be at risk.

\* \* \* \* \* \*

THE COURT: [The police] have to conduct investigations. They would really be derelict in their duties if they did not follow that up. You know, it went fromthe [sic] Sergeant to the Inspector and back to these men and they responded immediately as any responsible police officers would do and they get to the door. When they get to the door, you know, they are merely—they have suspicions, they don't at this point in time have any probable cause. All they know is they have received word that Bernard Jerry was seen going to 58 Roberts Street with a machine gun. Now, they have all these other things that they also know about 58 Roberts Street and Bernard Jerry, right? When a person answered the door, the person who appeared to be in custody of the house, at least an adult who could open the door, and when Officer Fetherolf said to that person, 'Is Bernard Jerry here.? [sic]' Now, his suspicions are confirmed when she pointed, 'Yes, he's here.' Now, the police officer at this point, in my opinion, had every right to be where he was and he had a right to enter to find out whether or not it was true that Bernard

Jerry was carrying a gun, and his continued investigation ended up revealing that he did—

\*     \*     \*     \*     \*     \*

We are here only arguing whether the police violated the dutyof [sic] their office and I don't believe they did in this case.

I'm going to deny the motion to suppress, for the reasons I have set forth.

We will stand in recess and I would like to see Counsel and all offivers [sic] in my chambers." (N.T. 31–32)

In our view, the suppression court's findings of fact and conclusions of law are supported by the record. In a similar case, we found that the officer's entry onto the premises and subsequent arrest was valid notwithstanding the fact that no warrants were obtained and stated the following:

"Appellant argues that his arrest and the search of the premises were unlawful because they were not based upon probable cause. Generally, the Fourth Amendment to the United States Constitution requires that a search warrant be issued before any search of a premises can be lawfully conducted. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However there are certain circumstances which, when they occur, justify a warrant-less search of a suspect or his premises. E.g. see *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Warrantless searches or seizures are frequently justified when the court finds such exigent circumstances which excuse the police from obtaining a warrant. *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In the *Warden* case the court held that neither the entry of a premises without a warrant to search for a robber, nor the search for him without a warrant was invalid where the exigencies of the situation made that course imperative, as where the police were informed that an armed robbery had taken place, and that the suspect had entered the premises less than 5 minutes before they reached it. The court held that the police had acted reasonably when they entered the house

under such circumstances and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The facts of the instant case are strikingly similar to the ones in *Warden*, supra. In our case the police had been informed that an armed robbery had just taken place. After a cursory search of the area at which the robbery had taken place they received information that the perpetrators of the crime were inside premises which was located about a block away from the scene of the crime. Their entry into the premises took place within 15 minutes of the robbery. Therefore we hold that the officer's entry onto the premises and arrest of appellant were sufficiently proximate in time and place to the scene of the crime so as to fulfill the doctrines of 'exigent circumstances' and 'hot pursuit' as recognized by the Supreme Court in the *Warden*, supra, case.

Appellant attempts to distinguish between our case and *Warden*, supra, in that in our case the information as to appellant's whereabouts was supplied by an unknown person not to the police officers themselves, but to the victim who then transmitted that information to the police. In *Warden*, supra, two taxi cab drivers who had observed the suspect enter certain premises relayed that information to the police. Since probable cause may be based on information which would be inadmissible in a court of law such as hearsay information, *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), and since the Supreme Court of the United States upheld the search of the premises in the *Warden* case under circumstances similar to the ones at hand we fail to see any distinguishing factors between the instant case and *Warden*, supra.

In both instances the information as to the suspects' whereabouts was provided through intermediaries. We fail to see how the cab dispatcher in the *Warden* case was any more reliable than the victim in our case, nor how the cab drivers were any more reliable than the unknown person in our case. The salient factors in our

case are that the robbery, the informer's tip, and the subsequent arrest of the appellant all occurred within 15 minutes time and within a block of each other. This places the occurrences so close to one another in time and place so as to justify the search as the probabilities were very great that a disinterested observer of the occurrences would have seen where the suspects went. Accordingly we find no unlawful police conduct relative to the search of the premises and subsequent arrest of appellant and his accomplice." *Commonwealth v. Montgomery*, 246 Pa.Super. 371, 375–377, 371 A.2d 885, 887–888 (1977).

▮ Additionally, we note that once the police were lawfully on the premises, they had a right to seize anything that was in plain view. *Commonwealth v. Harris*, 479 Pa. 131, 387 A.2d 869 (1978).[7]

Appellant attacks the validity of his arrest because it was made without a warrant. He cites *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978) for support of the proposition that a warrantless arrest in one's home, absent exigent circumstances, violates the Fourth Amendment protection against unreasonable searches and seizures. We need not examine whether *Williams* is controlling because our Supreme Court held in *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980), that *Williams* is not retroactive and applies only to "arrests made subsequent to the date of the *Williams* decision, November 18, 1978." *Commonwealth v. Norris*, 305 Pa.Super. 206, 211, 451 A.2d 494, 496 (1982). In the instant case, appellant was arrested on October 29, 1976, more than two years before *Williams* was decided. Accordingly, we need not examine the applicability of that decision.

▮ The second issue appellant raises concerns whether the trial court erred in allowing the police to testify at trial

7. The firearms violations were dropped by the prosecution because the prosecution had misindicted appellant because the barrel length of the rifle was sixteen inches long. Under 18 C.P.S.A. § 6102, a rifle must have a barrel of less than 15 inches in order to fall within the Uniform Firearms Act, Act of December 6, 1972, P.L. 1482, No. 334, § 1 *et seq., as amended. See Commonwealth v. Rapp*, 253 Pa.Super. 31, 384 A.2d 961 (1978).

that appellant had told the police that he had resided on the third floor of 58 Roberts Street, the scene of the crime. Appellant claims that this statement was the product of improper police interrogation. However, this issue was not raised at the pretrial stage nor was there this objection interposed at trial. Hence, a waiver has occurred. *See* Pa.R.Crim.P. 306 and *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

Appellant argues next that the evidence is insufficient to establish his conviction of receiving stolen property. More specifically, appellant contends that even if the prosecution established that the "gun was stolen, it has failed to show the necessary criminal intent on the part of Defendant." Brief for Appellant at 15. We agree.

■ When analyzing the sufficiency of evidence, we must view the evidence in a light most favorable to the verdict winner, in this case, the prosecution, and accept as true all of the evidence and the reasonable inferences therefrom, upon which the fact finder, the trial court, could have based its verdict. *Commonwealth v. Harrison*, 289 Pa.Super. 126, 131, 432 A.2d 1083, 1086 (1981).[8]

■ Additionally, in order to establish the crime of receiving stolen property, the prosecution had to prove beyond a reasonable doubt that "(1) the property had been stolen, (2) the accused received the property and (3) the accused knew or had reasonable cause to know that it had been stolen." *Commonwealth v. Worrell*, 277 Pa.Super. 386, 390, 419 A.2d 1199, 1201 (1980).

When viewed in a light most favorable to the prosecution, the record contains the following uncontradicted testimony:

Between September 21st and 23rd of 1975, a .38 caliber pistol, a "Smith and Wesson Chief Special", had been stolen

---

**8.** The prosecution did not address the merits of this issue because it contends that this issue also is waived because it was "not raised in appellant's first post conviction petition and [has] been finally litigated." Brief for the Prosecution at 10 n. 4. However, a deprivation of appellate rights does not operate as a waiver in this case, as previously discussed. *See Commonwealth v. Miranda, supra.*

from Frank Dampf, a police officer with Duquesne University's Department of Public Safety. (N.T. 63) While the officer did know that the pistol was stolen from his locker, he did not know who had stolen the pistol. On October 29, 1976, approximately one year and four weeks later, the police seized the pistol from the top of appellant's dresser, which was located on the 3rd floor of 58 Roberts Street.[9] No fingerprints were taken from the gun and the appellant presented no testimony on his behalf at trial.

In the past, we have said that the facts in receiving stolen property cases must be examined in light of the following considerations:

> "[T]he appellant's conduct; the appellant's relationship to the victim; the elapsed time between the appellant's possession and the theft; the situs of the theft and the situs of the possession; the kind of property; the quantity of the property; and the identifying characteristics of the property." (Citations omitted) *Id.*

*Commonwealth v. Harrison,* 289 Pa.Super. at 130, 432 A.2d at 1086 (*quoting Commonwealth v. Henderson,* 415 Pa. 452, 455, 304 A.2d 154, 156 (1973)).

■ Based on the above standard, we find that appellant offered no license or other explanation of how he came into possession of the pistol. Parenthetically, we note that it is not a crime in Pennsylvania to carry an unlicensed firearm in your home. *See* 18 Pa.C.S.A. § 6106 ("No person shall carry a firearm in any vehicle or concealed on or about his person, *except in his place of abode* or fixed place of business, without a license therefor as provided in this subchapter.) (Emphasis added).

■ Additionally, the fact that appellant's possession of the pistol was "unexplained" is not dispositive of the issue of appellant's guilty knowledge. *See Commonwealth v.*

---

**9.** It appears that appellant's father rents rooms on the 2nd floor to boarders, and that appellant's father resides on the first floor of the building.

Additionally, the record states that an individual also was arrested in appellant's room on October 29, 1976; however, this individual was released when the police discovered that he was a visitor.

*Stover,* 291 Pa.Super. 509, 436 A.2d 232 (1981) (plurality opinion).

> On this aspect of the case, we have said the following: "While the element of guilty knowledge may be established by direct or circumstantial evidence, the fact that an accused possesses stolen property is not by itself sufficient to establish the requisite guilty knowledge. *Commonwealth v. Simmons,* 233 Pa.Super. 547, 336 A.2d 624 (1975). Nor is the Commonwealth's position enhanced by the fact that possession of the stolen goods was 'unexplained.' *Commonwealth v. Owens,* 441 Pa. 318, 271 A.2d 230, 233 (1970). There must be sufficient evidence which a fact finder may conclude beyond a reasonable doubt that Appellant must have known that the goods possessed were stolen. *Commonwealth v. Henderson,* 451 Pa. 452, 304 A.2d 154 (1973)." *Commonwealth v. Ward,* 255 Pa.Super. 377, 380, 387 A.2d 98, 100 (1978).

Thus, without additional evidence, appellant's unexplained possession is not sufficient to support his conviction for the crime of receiving stolen property in this case.

We note that at the time of appellant's arrest, appellant did not flee nor did he indicate that the pistol on the dresser was stolen. *See Commonwealth v. Robinson,* 317 Pa.Super. 135, 138, 463 A.2d 1121, 1123 (1983) (the accused's conduct at the time of arrest is indicative of guilty knowledge); *Commonwealth v. Wilcox,* 310 Pa.Super. 331, 336, 456 A.2d 637, 640 (1983) ("Both Appellant's flight and his collection of car keys are supportive of Appellant's knowledge that the car was stolen.")

Second, the prosecution presented no testimony regarding the appellant's relationship with the victim. However, it was stipulated at trial that the "gun was stolen by some unknown person in September, 1975". (N.T. 63).

Third, with respect to the elapsed time period of approximately one year and three weeks, we have said that the term "recent possession" "correspond[s] to a period of time within which a thief could not have had the opportunity to

divest himself of possession." *Commonwealth v. Brosko,* 243 Pa.Super. 312, 318, 365 A.2d 867, 870 (1976). As applied to the instant case, we conclude that appellant's possession was not recent. *See Commonwealth v. Stover,* 291 Pa.Super. at 512, 436 A.2d at 233 (possession of an automobile 37 days after the car was stolen is "not very recent".) In this connection, our Supreme Court has even said that "substantial numbers of used guns are transferred in seemingly innocent circumstances." *Commonwealth v. Owens,* 441 Pa. at 325, 271 A.2d at 233.

Fourth, although the record states that the victim's pistol was stolen from his locker, there was no indication where the locker was located.

Fifth, even if appellant's possession of the stolen gun could be considered recent, we have said that possession of the kind of property involved in the instant case, a recently stolen gun, does not rise to an inference that "a possessor of a recently stolen pistol more likely than not knew or had reason to know that the weapon had been stolen". *Id.,* 441 Pa. at 325, 271 A.2d at 234.

Sixth, the rifle which was seized at the same time as the pistol did not prove to be stolen nor were any other stolen items seized by the police at the time of appellant's arrest.

Seventh, the prosecution failed to establish whether there were any distinguishing characteristics of the property.

Thus, in the absence of any other evidence, appellant's mere possession of the stolen pistol and his unexplained possession of the pistol are insufficient to support a conviction for receiving stolen property. Hence, we must vacate that conviction.

■■■ The record indicates that appellant was sentenced to not less than nine months nor more than eighteen months in prison for his convictions of possession of a controlled substance and receiving stolen property. However, because we are unable to determine the process by which the sentencing court arrived at the sentence because the sentencing transcript has not been forwarded to this Court, and because we are unable to glean such information from the

record, we must remand the matter for resentencing. *Commonwealth v. Welch,* 291 Pa.Super. 1, 3, 435 A.2d 189, 190 (1981).

Remanded for proceedings not inconsistent with this opinion. Jurisdiction is not retained.

ROWLEY, J., filed a concurring and dissenting statement.

ROWLEY, Judge, concurring and dissenting:

I join in the opinion of the Court. However, I respectfully dissent from the decision to remand this case for resentencing.

Appellant has not raised, in his statement of questions involved, an issue concerning his sentence or the sentence proceeding. Pa.R.A.P. 2116 is "in the highest degree mandatory," and we should not consider issues that have not been raised by the appellant in his statement of questions involved. Moreover, even if the issue was properly before us, rather than remand for resentencing I would direct that a supplemental record consisting of the sentencing transcript be certified and transmitted to this Court pursuant to Pa.R.A.P. 1926. However, since the issue has not been raised, I would affirm the judgment of sentence.